car came upon the street back of the place where these horses were being led, and when it came to these horses one of the horses jumped around against the side of the car, and thereby became injured. It is the claim of the plaintiff, which the judgment of the City Court has established, that the car was negligently run, and that more care should have been taken in approaching these horses, and therefore that the plaintiff is entitled to recover for the damage caused by the defendant's negligence. It makes little difference whether the horse was hit by the forward end of the car, or whether the horse jumped into the car. The defendant's duty was to exercise care in running its cars upon a public street, that accidents might not be caused. From the plaintiff's proof it is possible to find that, when this car was over 1,000 feet from these horses, the horses appeared frightened, and were "bobbing" around and jumping upon the track, and that the defendant's motorman ought to have seen them and brought his car down to a very slow pace, if not to have stopped it for the moment entirely. It may also be found from the evidence that the motorman, disregarding his duty, either did not slow up at all, or at least did not slow up sufficiently, and that by reason thereof the horses became frightened when the car was opposite them, and in their fright this damage was caused. It is true that the testimony of the plaintiff's servant is the only testimony in behalf of the plaintiff. This servant is not now in the employ of the plaintiff. Nevertheless he is clearly interested in the action. So, also, are the defendant's witnesses, the motorman and conductor of this car. They swear that the car was brought to a slow pace, and that there was no evidence of any fright on the part of the horses. It seems clear, in reviewing the evidence, that a question of fact was presented, and that there was sufficient evidence upon which the City Court could base this judgment. Of course, we cannot see the witnesses. They were before the City Court. He could judge of their credibility. We would not be justified, nor would the County Court in the case at bar have been justified, in setting aside this verdict as against the weight of evidence.

I recommend, therefore, that the judgment be affirmed, with costs. All concur.

---

In re COLUMBIA TRUST CO. (No. 7782.)

(Supreme Court, Appellate Division, First Department. November 12, 1915.)

1. PARTNERSHIP ☞254—SURVIVING PARTNER—AGREEMENT TO PURCHASE—INTEREST—HOW COMPUTED.

Where, under a partnership agreement, the net value of each partner's share was to be ascertained by a balance struck on the last day of January of each year, and in case of the death of one the survivor was to purchase his share at the amount shown by the balance next preceding such death, with interest thereon from the date of such balance, the surviving partner, upon so purchasing, is liable for interest on the amount representing the deceased partner's share, as shown by the last balance, and running from the date thereof, and is not bound to pay interest from the death of the partner upon the amount fixed by the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

balance, plus interest thereon, from the date of the balance until the death of the partner, since, under the contract, interest begins to run from last balance, and not from the partner's death.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 551; Dec. Dig. ☜254.]

2. PARTNERSHIP ☜254—CONTRACT FOR PURCHASE BY SURVIVOR—PAYMENT—INTEREST.

The obligation to pay interest for any time before payment becomes due must be found in the contract itself, since otherwise no interest would be chargeable until the payment became due.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 551; Dec. Dig. ☜254.]

Appeal from Surrogate's Court, New York County.

Judicial settlement of the accounts of the Columbia Trust Company as executor of George W. Crossman, deceased. From a decree of the Surrogate's Court, surcharging the account with the sum of $13,-115.35, the Trust Company appeals. Reversed and modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Eugene Smith and Leonard B. Smith, both of New York City, for appellants.

James P. Niemann and John Lindley, both of New York City, for respondents.

DOWLING, J.   The Columbia Trust Company having filed its account as executor of the estate of George W. Crossman, deceased, the same was approved and confirmed in every respect by the decree of the Surrogate's Court, except that it surcharged the account with the sum of $13,115.35, which amount the executor was directed to pay and distribute among the legatees.   It is from this provision of the decree that the present appeal is taken.

The decedent, George W. Crossman, died January 15, 1913.   On January 31, 1912, he and Herman Sielcken entered into a partnership agreement in writing, two of the provisions of which were as follows:

"Tenth. On the 31st day of January in each year there shall be made a full inventory account and balance sheet in writing showing all the property, assets, and liabilities of the partnership, and stating the net value of the share therein of each of the partners.   Some time from and after the 31st day of January will necessarily be consumed in making up such a balance, but all the entries therein shall be made as of the 31st day of January, so that the balance sheets shall state the accounts, the assets, and the liabilities, and the share of each partner as the same were on that date.

"Eleventh. Upon the death of either of the partners during the existence of the partnership, the surviving partner shall purchase all the right, share, and interest of the partner so dying in all the partnership business and property, and shall assume all the then existing liabilities of the partnership.   The price to be paid for such purchase is hereby fixed and agreed upon as follows: It shall be the amount stated as the net value of the share in the partnership of the deceased partner in the balance sheet of the 31st day of January next preceding his death, together with interest thereon from the date of the said balance sheet at the rate of four (4%) per cent. per annum.   Such purchase price shall be paid as follows: Twenty per cent. thereof within three

months from the date of such death, and the remainder at such times and in such amounts as may suit the convenience of the surviving partner: Provided, that the whole thereof shall be paid within two years after such death. The estate of the deceased partner shall not be entitled to share in any increase or profits gained, nor be liable for any losses incurred, in the business after the 31st day of January next preceding his death; but all such profits shall belong to, and such losses be borne by, the purchasing partner."

By the firm's balance sheet of January 31, 1912, the net value of testator's share in the partnership was stated as $5,014,106.32, and decedent had withdrawn thereafter $38,687.92, leaving a balance of $4,975,418.40. Under the partnership agreement, this was the amount which the surviving partner was to pay for the share of the deceased partner, with interest thereon from the date of the balance sheet at the rate of 4 per cent. per annum. The payment was to be made, 20 per cent. within three months from the date of the deceased partner's death, and the remainder at such times and in such amounts as might suit the convenience of the surviving partner, but within two years after such death. The surviving partner, Sielcken, paid on account of the decedent's share, the sum of $1,000,000 on February 7, 1913, $33,398.23 on May 2, 1913, and $4,454,117.68 on January 15, 1915, making a total of $5,487,515.91. This amount was determined upon as the entire purchase price of the decedent's share by taking the 20 per cent. of the same agreed upon by the partnership agreement within three months of decedent's death ($995,083.69) and charging interest thereon from the date of the balance sheet (January 31, 1912) to the date of the first payment (February 7, 1913) at 4 per cent., amounting to $40,577.30, making a total of $1,035,660.98, from which the payment of $1,000,000, made on February 7, 1913, being deducted, left a balance due on the first installment of $35,660.98. The interest on this to the date of the next payment was $336.80, making a total of $35,997.78, on account of which there was paid on May 2, 1913, the further sum of $33,398.23, leaving a balance due on said installment and interest on said date of $2,599.55, the further interest on which sum to the date of final payment, January 15, 1915, amounted to $177.06, or a total of $2,776.61. The remaining 80 per cent. of the purchase price, amounting to $3,980,334.72, with interest thereon from January 31, 1912, to January 15, 1913 ($471,006.28), aggregated $4,451,341. Adding to this the balance of the first installment due on said date, $2,776.61, made a total due of $4,454,117.61, which Sielcken paid to the executor on January 15, 1913.

[1, 2] The surcharge decreed to be paid is arrived at by charging interest on the decedent's balance down to the date of his death, adding that to the principal sum, and charging interest from that date on both principal and interest. By following this method of computation an additional interest charge of $13,115.35 is created. But we find no warrant for following such a method. The partnership agreement contains no reference whatever to the date of decedent's death as fixing the time when interest is to begin to run. On the contrary, such time is determined as the date of the last balance sheet. Interest is then to begin, and is to run, obviously not until decedent's death, but until the survivor makes the payments required by the agreement, 20

per cent. within three months and the balance within two years, after such death. It will be seen that the obligation to pay interest must be found in the agreement itself, or no interest whatever was payable until the payments became due. There being no provision that interest should be computed in any other way, it should be computed down to the times when payment was actually made as provided by the agreement. No provision of decedent's will did, or could, alter the terms of the copartnership agreement, or fix a different date for the beginning of the interest charge. Nor is any other decree before us which at all interferes with the conclusion reached by us.

The portions of the decree appealed from should be reversed, and it should be further modified, by providing that the account of the executor be judicially settled and allowed as filed. Costs are allowed to all the parties appearing on this appeal, payable out of the estate. All concur.