DANIEL MCCARTHY et al., Respondents, *v.* THOMAS PIERET, Defendant, and MICHAEL JACKMAN, as Administrator of the Estate of CATHARINE McC. JACKMAN, Deceased, Appellant.

Argued October 5, 1939; decided November 21, 1939.

*David Friedman, Milton Friedman* and *Martin J. Fay* for appellant.

*Edmund C. Reardon* and *Nelson A. Ball, Jr.*, for respondents.

CRANE, Ch. J.   On or about the 7th day of March, 1932, the defendant Thomas Pieret executed a bond and mortgage in the sum of $3,000 to Catherine McCarthy Jackman. Subsequently, and on the 18th day of December, 1934, Catherine McCarthy Jackman entered into an extension agreement of the aforesaid bond and mortgage wherein and whereby the due date of payment of the bond and mortgage was extended to March 7, 1940.   The extension agreement contained the following unusual provision: " And in the event of the death of the party of the first part prior to the 7th day of March, 1940, the interest is to be paid one-half to Daniel McCarthy, brother of the party of the first part and one-half to the heirs of Ellen Buckley, deceased sister of the party of the first part and the principal paid the same at time of maturity."

Catherine McCarthy Jackman, the mortgagee, died on March 16, 1935, one week before the recording of the extension agreement. Thereafter, an installment of interest in the amount of the sum of $75 became due on the aforesaid bond and mortgage. This installment of interest was claimed by the plaintiffs, a brother, nieces and nephews of the deceased. They claimed the installment by virtue of the extension agreement. A similar claim was made by Michael Jackman, husband and administrator of Catherine McCarthy Jackman. The mortgagor Pieret, refused to pay either the plaintiffs or the administrator on the ground that he was in doubt as to who was lawfully entitled to the installment of interest, which resulted in the bringing of this suit, Michael Jackman, the administrator, being impleaded.

The judgments below have held this extension agreement to be a valid disposition in the nature of a gift, and not an attempted testamentary disposition in violation of section 21 of the Decedent Estate Law (Cons. Laws, ch. 13). It is not always easy to determine whether a transaction is a gift or is testamentary in character. It depends upon the intention of the donor.

A concise statement of the rule, easy of expression but difficult in application, is to be found in 28 C. J. (p. 624, § 11 [e]): " Where a gift is made effective in the lifetime of the decedent and he has divested himself of all power to recall it, such transaction is a gift *inter vivos*, and not testamentary in its nature. If the gift does not take effect as an executed and completed transfer to the donee, either legally or equitably, during the life of the donor, it is a testamentary disposition, good only when made by a valid will. * * * The test is whether the maker intended the instrument to have no effect until after the maker's death, or whether he intended it to transfer some present interest."

If this question of intention of the testator is the deciding factor we must, I think, draw the inference that the mortgagee never intended to transfer a vested interest in the mortgage to the brother and the heirs of her sister. Neither

did she divest herself of all control or interest in the mortgage. After March 7, 1940, the principal and interest were to be paid to her if she were alive, likewise the interest and principal were to be paid to her any time during her lifetime up to March 7, 1940. She could have satisfied the mortgage and taken the principal at any time during her life. Had the mortgagor desired to pay the mortgage he could have paid it to the mortgagee. Surely if this had been done these collateral relatives would have had no interest by reason of the extension. Their rights, at best, only arose on the death of the mortgagee prior to March 7, 1940. Suppose there had been default in the payment of taxes and interest and foreclosure was necessary. Could the mortgagee have foreclosed or would it have been necessary to join these collateral relatives? To put the question is to answer it. These collaterals had no present interest. Nothing was transferred to them. The mortgagee never intended to divest herself of all rights and control in and over this mortgage until her death. At death, and only that within a certain time, were these collaterals to receive anything. This to my mind is an attempt to provide for the passing of property at death, in the nature of a will, and contrary to the provisions of section 21 of the Decedent Estate Law.

*Seaver* v. *Ransom* (224 N. Y. 233) is no authority for sustaining the claim of the respondents here. Contracts made for the benefit of third parties are well recognized today, but they are executed contracts, where the promisee is unable to revoke or control the promisor in the fulfillment of the promise. The decision has nothing to do with attempts to make testamentary dispositions, and assumes that all three parties are alive.

I do not say that the passing of property at death may not be provided for by contract or by deed, but the donor in such cases divests himself of all interest and vests it in the beneficiary. His intention is to establish present rights and not postpone them until death. He retains no further control over the transaction but, for a consideration or

else because of relationship, establishes a present enforceable interest, postponed in enjoyment perhaps until death. This view finds support in the case of *Townsend* v. *Rackham* (143 N. Y. 516, 519), where the absurdities of holding otherwise clearly appear. A woman seventy-three years of age conveyed a farm to her two grandchildren, taking back a mortgage from them, a condition in which stated:

" ' This grant is intended as a security for the payment of the following sums of money, to wit: $75.00 on the first day of January and $75.00 on the first day of July in each and every year thereafter during the natural life of the party of the second part, to be paid to the party of the second part at the homes of the said parties of the first part, in the town of Carlton.

" ' And the further sum of $1,500 to be paid as follows: $1,000 to Maria Leach or her heirs five years from the death of the said party of the second part, and $500 to be paid to Esther C. Lutts five years from the death of the said party of the second part (the several sums herein mentioned are for the purchase money of said premises). And as further consideration to these presents it is agreed between the parties that in addition to the sums above mentioned and agreed to be paid the said parties of the first part agree to and with the party of the second part to provide her, the said Catharine Farnham, at their home or homes, at all times when she may choose during her natural life, and provide for her board and all necessary clothing, and all things necessary and proper for her comfort and support during her natural life.

" ' And this conveyance shall be void if such payments be made as herein specified and in case default shall be made in the payment of the above sums hereby intended to be secured or any part thereof, or in case default be made in providing for and taking care of the party of the second part as above provided, it shall be lawful for the party of the second part, her executors, administrators or assigns, at any time thereafter, to sell the premises hereby granted, or any part thereof, in manner provided by law, and out of

the moneyf arising from such sale to retain the amount then due, together with costs and charges of making such sale. Or in case default during the lifetime of the said Catharine Farnham shall be made in any of the above conditions the party of the second part may re-enter and take possession of the above-described premises and declare this obligation void.' "

Maria Leach, named in the above mortgage, was the sister, while Esther C. Lutts was one of the grandchildren of the mortgagee, whose name was Catharine Farnham. On the 12th of October, 1857, this mortgage was satisfied by the mortgagee and a satisfaction piece was duly recorded. On the next day the mortgagor executed and delivered to the same mortgagee another mortgage on the same premises with the same condition as in the first mortgage. Subsequent mortgages and deeds were given without ever consulting or considering Maria Leach or Esther C. Lutts. After the death of Catharine Farnham, the original purchase money mortgagee, Maria Leach and Esther C. Lutts commenced foreclosure proceedings of the mortgages which had been satisfied on the claim that the provision as to them in the condition above quoted gave them an interest in the mortgage and property.

The referee found that the mortgages had all been satisfied in their order and the satisfaction pieces duly recorded, and that each subsequent mortgage was intended as a substitution for the preceding one which was satisfied by Catharine Farnham. He also found that she took the various mortgages upon the understanding and belief that the whole arrangement was testamentary in its character, and in the nature of a will. This court sustained the findings on the ground that there was an overwhelming presumption that the provisions for the payments to these ladies named after the death of the mortgagee were in their nature testamentary amounting to nothing more than a legacy or gratuity given by or coming from the mortgagee. The court was unanimous in this decision.

I can see little, if any, difference between this *Townsend* case and the one here for decision. The facts in each indicate a mere intention on the part of the mortgagee to make a testamentary disposition of the property and not an intention to convey an immediate interest. As in the *Townsend* case the plaintiffs knew nothing of the provisions of this extension agreement. This is not vital, but is a circumstance. (See, also, on this point *Priester* v. *Hohloch*, 70 App. Div. 256; *Butler* v. *Sherwood*, 196 App. Div. 603; 1 Heaton on Surrogates' Courts [4th ed.], p. 203.)

For the reasons here stated the judgments should be reversed and the complaint dismissed, with costs in all courts.

HUBBS, FINCH and RIPPEY, JJ., concur; LEHMAN and LOUGHRAN, JJ., dissent; O'BRIEN, J., taking no part.

Judgments reversed, etc.