In the Matter of the Estate of WILLIAM J. DEYO, Deceased.*

Surrogate's Court, New York County, June 3, 1943.

* See, also, *Matter of Karlinski,* 180 Misc. 44.—[REP.

*Edelman & Edelman* for Ann Deyo, as coexecutrix, petitioner.

*John E. Buck* for Harry Adams, as coexecutor, respondent.

Foley, S. The petitioner, who is the widow of the decedent, the sole residuary legatee and an executrix under his will, has initiated this proceeding to compel her coexecutor to perform certain acts and to have him removed as an executor because of alleged misconduct. The respondent executor is the nephew of the decedent. Dissension and ill feeling have developed between the widow and the nephew.

The principal question presented for consideration here is that part of the application which seeks to compel the executor to take no position adverse to that of the petitioning executrix in the pending action in the Supreme Court, Kings County, entitled *Deyo* v. *Adams*. The intermediate decision sus-

taining the sufficiency of the complaint was made at Special Term. (*Deyo* v. *Adams*, 178 Misc. 859.) It has been the subject of widespread comment because of its holding that United States Savings Bonds, registered in the name of the purchaser and at his death in a named beneficiary, remained, after the death of the purchaser, as an asset of his estate and did not belong to the surviving beneficiary. (Report of Law Revision Commission, Leg. Doc. [1943] No. 65 [M]; Butler, " Recommended Legislation Respecting United States ' Beneficiary ' War Bonds," 108 N. Y. L. J. 2052, 2064, 2080, Dec. 28-30, 1942; 27 Minnesota Law Review, p. 401; 56 Harvard Law Review, p. 1007; 43 Columbia Law Review, p. 260.)

William J. Deyo, the decedent, died September 25, 1940. During the year 1935 he purchased twelve United States Savings Bonds, all of which were outstanding at the time of his death. The bonds were in varying face amounts and their aggregate value as of the respective dates of maturity was $7,000. They were registered in the name of the decedent, William J. Deyo, payable on death to his sister, May Adams.

After the death of the decedent, his sister turned in all of the bonds and procured the issuance of other bonds in their place. The new bonds were registered in the name of the sister, and at her death to her son, Harry Adams, who is the respondent executor.

The executrix instituted the action in equity in the Supreme Court in which she named as defendants Harry Adams, both individually and as executor, and May Adams. Its purpose was to obtain a determination that this estate was the owner of the bonds and that the defendants should deliver the proceeds to the estate. The learned justice at Special Term in the decision referred to above was of the opinion that the regulations of the Federal government concerning the manner of issue and payment of the bonds did not preclude the application of the laws of the State of New York determining the validity of the inheritance of property. He held that the " attempted disposition of the proceeds of the bonds is a testamentary disposition and could only be made by will in accordance with the laws " of this State. By way of dictum he stated that the proceeds of the bonds belonged to the estate. The motion of the defendant to dismiss the complaint was accordingly denied and he was given time to file an answer. That action is still pending.

In his answer in the pending proceeding in this court, the respondent executor has set forth facts which clearly show that **responsibility for the unjustifiable delay in the disposition of**

the question of ownership of the bonds rests wholly with the executrix. She could have instituted a discovery proceeding in this court. This plan would have provided a simple and effective method of establishing title to the property. In regular course the Surrogate would have placed the matter on the calendar for hearing and an early decision would have been made. If either party desired a review by the appellate courts, there was ample opportunity to have had a final determination long before the present date. Instead of pursuing this simple and expeditious course, the executrix instituted an action in the Supreme Court in December, 1941. To date the case has not been noticed for trial.

Indeed there is indication that there will be further delay before the matter is brought on for trial. The United States Attorney, at the direction of the Attorney-General of the United States, made a motion in the Supreme Court for permission to appear in the action for the purpose of filing " Suggestion of the Interest of the United States in the Matter in Litigation," and of asserting such interest. After several adjournments of the motion at the instance of the attorneys for the executrix the motion of the United States Government was granted. Thereupon the executrix served a notice of appeal from the order granting the motion, but has not proceeded further. It is clear therefore that, even though she neglected to pursue the regular course in the Surrogate's Court, she could have long ago obtained a determination in the forum she chose. Apparently she prefers to rest upon the intermediate decision referred to above and to attempt in every way possible to prevent the respondent from obtaining a final determination on the merits.

That part of the pending application which seeks the aid of this court to interfere with the conduct of the executor in defending the action is denied. In the opinion of the Surrogate, the executor's position is entirely justified and he is correct in his contention that these bonds or their proceeds are not assets of the estate. With due respect for the writer of the opinion in *Deyo* v. *Adams* (*supra*), the Surrogate is of the further opinion that the form of registration of the bonds is sufficient to vest title of the proceeds in the surviving beneficiary after the death of the purchaser.

The question possesses an importance which far transcends the mere dispute between these cofiduciaries. The extent of the interest of a person named in United States Savings Bonds

issued in so-called " beneficiary form " has been before the courts of other jurisdictions and conflicting decisions have resulted. The issuance of savings bonds and similar securities was undoubtedly designed to provide a patriotic opportunity for people of small means to invest their savings in their government. (*United States* v. *Sacks,* 257 U. S 37, 41; *Matter of Owens,* 177 Misc. 1006.) It provides, too, an opportunity for all persons to participate in the great struggle in which our country is now engaged to preserve its free institutions.

After the decision in *Deyo* v. *Adams* (*supra*), the Legislature of our State thought it necessary to enact a statute to dispel any doubt created by that decision (L. 1943, ch. 632). The terms and scope of that Act are hereafter discussed.

Because of the fact that many such bonds are presently held in the estates of persons who died before the effective date of the new statute, and because representatives of small estates are at a loss as to what action to take in the face of conflicting decisions of the courts, the Surrogate feels that discussion of the question at the foundation of the dispute between these two fiduciaries is desirable.

The Secretary of the Treasury has been authorized by Congress to issue United States Savings Bonds which " shall be in such forms, * * * and shall be issued in such manner and subject to such terms and conditions * * * and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe." [U. S. Code, tit. 31, § 757c, par. (a).] Pursuant to this authority the Secretary has adopted regulations governing the registration of the bonds. It is expressly provided that such bonds might be registered in beneficiary form, that is " John Smith, payable on death to Mary Smith." (Regulations Governing United States Savings Bonds, Feb. 25, 1935, Treasury Dept. Circular No. 530, § I, subd. 2[c].) This is the form in which the bonds here were issued.

The savings bonds are not transferable and are payable only to the persons named therein and in accordance with the provisions of the regulations. (Regulations, *supra,* § II.) These bonds cannot be made the subject of a gift. (*Matter of Owens,* 177 Misc. 1006.)

A bond registered in the name of one person payable on death to another will be paid to the registered owner during his lifetime upon his duly executed request. (Regulations, *supra,* § VI.) However, a bond registered in such form may not be canceled and reissued during the lifetime of the beneficiary so as to eliminate his name. (Regulations, *supra,* § X, subd. 2.)

If the registered owner dies without having surrendered the bond and is survived by the beneficiary, upon proof of such death and survivorship the bond will be paid to the beneficiary or reissued to him as if he had been the registered owner. (Regulations, *supra,* § X, subd. 1.) Subsequently amended regulations were issued but of similar substance. Their provisions are not of importance here.

In the conflicting decisions which have been rendered in other jurisdictions upon the ownership of this form of bond, the overwhelming weight of reason and authority is on the side of those that sustained the form of the registration and held that the surviving beneficiary was entitled to the proceeds. These decisions were based principally upon the supremacy over the State law of the Federal statute which authorized the issuance of bonds and the Regulations of the Secretary of the Treasury relating to them. Certain of them also rested upon the enforcibility of a contract made between the purchaser and the government for the benefit of a third party. They are: *Warren* v. *United States* (68 Ct. of Claims 634 [1929], certiorari denied 281 U. S. 739); *Franklin Washington Trust Co.* v. *Beltram* (133 N. J. Eq. 11); *Laufersweiler* v. *Richmond* (22 Ohio Opin. 265); *Matter of Estate of Stanley* [*Meyer* v. *Mercier*] (102 Colo. 422).

The contrary decisions have found that the form of registration was void and in contravention of the local State law regulating gifts or as violative of statutes governing the manner of execution of a will. (*Decker* v. *Fowler,* 199 Wash. 549; *Deyo* v. *Adams, supra.*)

*Warren* v. *United States* (*supra*) was decided by the United States Court of Claims. The decision was rendered in 1929. It involved war-savings certificates issued in 1922, under the same statute as the bonds here and registered in form similar to those involved here. After the death of the registered owner his executrix sought to collect the proceeds of the certificates. The Secretary of the Treasury refused to pay the certificates to the executrix on the ground that under the language of the certificates and their terms, the Regulations of the Treasury and the contract between the parties, the money was payable to the beneficiaries named in the certificates. The executrix thereupon brought suit in the Court of Claims. She contended that the Act of Congress was unconstitutional and the Regulations of the Secretary of the Treasury void for the reason that they were in effect an attempt to control the devolution of property as fixed by the statutes of the State of Texas. The Court of

Claims overruled her contentions. It held that the case was simply one of contract, a part of which contract was the Act of Congress previously passed and the Regulations of the Treasury. Such regulations were held to be consistent with the Act and not in violation of its purposes. These regulations, therefore, had the force and effect of law and are to be read into the contract between the parties. In refusing to pay the certificates to the executrix of the purchaser the court held that the Secretary of the Treasury was acting in conformity to the provisions of the contract. Her petition was accordingly dismissed. Certiorari was denied by the Supreme Court of the United States.

*Laufersweiler* v. *Richmond* (*supra*) was decided by the Probate Court of Montgomery County, Ohio, in 1942. The action was for a declaratory judgment to determine the ownership of the proceeds of United States Savings Bonds purchased by the decedent and registered in beneficiary form. The executor of the decedent instituted the action and named the beneficiaries as defendants. The court held that the beneficiaries and not the executor were entitled to the bonds. It said: " Under the act of Congress and Treasury Department regulations, such designated beneficiary has certain definite, fixed, vested rights in said contract from the date of the purchase of said bonds, which may be defeated only by the registered owner exercising his right to cash the bonds during his lifetime." (p. 269.) The court held further that the Act of Congress and the regulations issued in conformity thereto were supreme and that the laws of the State of Ohio " are, and must be subservient thereto." (p. 271.)

*Franklin Washington Trust Co.* v. *Beltram* (*supra*) was decided by the Court of Chancery of New Jersey. The United States Savings Bonds there involved were purchased by the decedent and registered in her name payable on her death to her minor children. It was held that the bonds belonged to the designated beneficiaries. The court determined that the Federal law took precedence over the State law. It also held that even if the decision were not controlled by the supremacy of the Federal law, the result would be the same since no statute or policy of the State of New Jersey would operate against such a contract. " There is nothing of a testamentary character in such a contract. It is an instance of a contract partially for the benefit of a third party, and on which **a right of action accrues to the third party.**"

The Supreme Court of Colorado reached the same conclusion in *Matter of Estate of Stanley [Meyer v. Mercier]* *(supra)*. There, the decedent purchased United States Savings Bonds and registered them in the name " Mrs. Josephine M. Stanley (the decedent) or Mrs. Corrine S. Mercier (a niece)." In her will the decedent bequeathed " any and all notes, bonds, stocks of corporations or other choses in action " to her sisters and her niece. The court held that under the supremacy clause of the Federal Constitution, the Treasury Regulations were paramount and that the general provision in the will was ineffective as to the government bonds there involved.

The Surrogate is in accord with the conclusion reached in these cases.

The Regulations of the Secretary of the Treasury are within the authority conferred upon him by Congress and they have the force and effect of Federal law. (*United States v. Sacks*, 257 U. S. 37; *United States v. Janowitz*, 257 U. S. 42; *Maryland Cas. Co. v. United States*, 251 U. S. 342.) " All constitutional acts of power, whether in the executive or in the judicial department, have as much legal validity and obligation as if they proceeded from the legislature, * * *." (*United States v. Pink*, 315 U. S. 203, 230, citing The Federalist, No. 64.) Such regulations constitute the supreme law of the land and any State law or supposed policy in conflict with them cannot prevail.

The power of the State to regulate the devolution of property is unquestioned and the courts have never hesitated to uphold the State's right where it was exercised within the constitutional limitations. (*Irving Trust Co. v. Day*, 314 U. S. 556; *Riggs v. Del Drago*, 317 U. S. 95.) Where, however, the State acts in conflict with the paramount power of the Federal government, its act is nugatory. " The Constitution has conferred upon the Government power to borrow money on the credit of the United States, and that power cannot be burdened or impeded or in any way affected by the action of any State." (*Home Savings Bank v. Des Moines*, 205 U. S. 503, 513; *Macallen Co. v. Massachusettss*, 279 U. S. 620, 624.)

The Secretary of the Treasury has officially defined the details necessary to accomplish effectively the purpose of the Congress. Thousands of these bonds have been purchased by small investors in reliance upon the promise that they would be paid in accordance with their terms and in accordance with the regulations under which they were issued. If any State can now set at naught the provisions contained in the bonds and can render

nugatory the Regulations of the Treasury, the means employed by the government to accomplish its purpose are injuriously affected and its power to raise money is impaired.

It is suggested in *Deyo* v. *Adams (supra)* that conflict between the Federal and State laws is avoided if the Treasury Regulations are construed to relate only to the form of payment and the protection of the government from double litigation and to have no relation to the actual enjoyment of the proceeds after collection. If this were so, countless holders of these bonds have been mocked. The representations upon which the bonds were sold would amount only to a play on words. This attempted distinction is without any substance whatever. Such a result certainly was never contemplated either by the Treasury Department or by the millions of purchasers of these bonds.

No conflict between the Federal law and the law of the State of New York exists in this situation. No principle of law, no policy of our State operates to defeat or diminish the rights of a beneficiary under this form of bond. Under the law of our State, as well as under the law of the United States, the right of the beneficiary to enforce the provisions of his contract is recognized and protected.

For the moment we deal with the law of contracts, not with the law of property. The principles of law governing the validity of gifts have no application to this problem.

Contracts made for the benefit of third parties are recognized by the courts today and will be enforced at the instance of the donee beneficiary. (*McCarthy* v. *Pieret,* 281 N. Y. 407, 410; *Seaver* v. *Ransom,* 224 N. Y. 233; *Matter of Fairbairn,* 265 App. Div. 431.) This is especially true where the beneficiary is a close relative. The beneficiary here is the sister of the decedent.

In this State there is an exception to this rule in the case of an instrument which is in the nature of a testamentary disposition and not executed with the formalities required by our Statute of Wills (Decedent Estate Law, § 21). When the court determines that what purports to be a contract is in substance an informal will, it will unhesitatingly declare it such and refuse to sanction it. (*Earl* v. *Peck,* 64 N. Y. 596; *Townsend* v. *Rackham,* 143 N. Y. 516; *McCarthy* v. *Pieret, supra.*) Whether an instrument is a valid contract or is an attempted testamentary instrument depends upon the intention of the donor. (*McCarthy* v. *Pieret, supra,* p. 409.)

In the case last cited the Court of Appeals held that the decedent intended merely an ambulatory testamentary disposition which was unenforcible. It pointed out that there was no

intention to convey an immediate interest. The court recognized, however, the right to provide by contract for the passing of property at death.

The test in all cases is whether the contract confers a fixed right upon the beneficiary at the time it is made or whether it is to have no effect at all until the death of the maker. (*McCarthy* v. *Pieret, supra; Matter of Fairbairn, supra; Robb* v. *Washington & Jefferson College,* 185 N. Y. 485, 493; *Chase Natl. Bank* v. *Manufacturers Trust Co.,* 265 App. Div. 406, 410; *Johnston* v. *Scott,* 76 Misc. 641, 645; 1 Davids, New York Law of Wills, § 444.) If a present interest is transferred to the beneficiary, it is immaterial that it is postponed in enjoyment until a future time or is conditional or defeasible. (*Matter of Tilley,* 166 App. Div. 240; *Matter of Fairbairn, supra; Chase Natl. Bank* v. *Manufacturers Trust Co., supra.*) "The character of the promise is not changed by the time fixed for its performance." (*Ga Nun* v. *Palmer,* 216 N. Y. 603, 609.)

In the case of bonds in the form issued here, there can be no doubt that the beneficiary acquired a present interest at the time the bonds were purchased. (*Laufersweiler* v. *Richmond, supra;* Whittier, "Contract Beneficiaries," 32 Yale L. J., pp. 790, 795; 27 Minn. Law Review, pp. 401, 402.) The registered owner provided for payment to the beneficiary directly in the event that the beneficiary survived him to the date of maturity and the bonds were still outstanding. Under the Treasury Regulations he might surrender the bonds for redemption but he was powerless to eliminate the name of the beneficiary during the latter's lifetime. To that extent he retained no power of revocation over the transfer.

The beneficiary's rights thus came into existence at the time the contract was made, though they were not to take effect in enjoyment until after the decedent's death. "But this was by reason of the terms of the instrument itself, not because that instrument was testamentary." (*Robb* v. *Washington & Jefferson College, supra,* p. 493; *Matter of Fairbairn, supra,* p. 433.) It is unnecessary to denominate the beneficiary's interest. Whether it be called a defeasible vested interest (2 Williston on Contracts [rev. ed.] § 369), a mere expectancy, or a contingent interest, is of no importance. (*Davis* v. *Modern Ind. Bank,* 279 N. Y. 405.) The fact that the beneficiary's right might be destroyed by decedent's redemption of the bonds prior to maturity does not affect the *existence* of her right; it merely characterizes it as conditional. Such a conditional right is enforcible when the contingency has taken place. (Restatement, Law of Contracts, § 134.)

Many forms of transactions vesting title at the death of one of the parties have been accorded validity by the courts of our State. The rights of a beneficiary under these bonds are somewhat analogous to the rights of a beneficiary under an insurance policy, a beneficiary under a trust agreement or a beneficiary of a Totten trust. Each of these cases may be considered *sui generis*. (2 Williston on Contracts [rev. ed ] p. 1079; 1 Scott on Trusts, p. 360.) They are indicative, however, of the policy of our State in recognizing and enforcing rights to property which are not to vest in enjoyment until the death of the donor. An endowment policy of insurance where the insured reserves the right to receive the proceeds at maturity or to take the cash surrender value of the policy, but retains no right to change the beneficiary, presents a situation similar to that involved here. A deed of trust wherein the settlor reserves a right of revocation possesses many of the characteristics of the present agreement. A Totten trust of a savings bank account gives the owner much greater rights than the rights reserved under these bonds. (*Matter of Totten,* 179 N. Y. 112; 1 Scott on Trusts, p. 360.) Yet in none of these cases is the agreement condemned as testamentary in character or violative of our public policy. The fact that the insurance beneficiary's right is conditional does not make the policy ambulatory in character. (2 Williston on Contracts [rev. ed.] § 369; *McGowin* v. *Menken,* 223 N. Y. 509, 513; *Lane* v. *De Mets,* 59 Hun, 462.) A right of revocation does not make a trust testamentary. (*Van Cott* v. *Prentice,* 104 N. Y. 45, 55; *Robb* v. *Washington & Jefferson College,* 185 N. Y. 485, 493; 1 Scott on Trusts, pp. 332, 336.) In like manner, the fact that the beneficiary under these bonds could not come into possession of the proceeds until the death of her brother did not make the agreement one for a testamentary disposition.

Further recognition that enforcement of the rights of a beneficiary pursuant to the terms of the savings bond offends no policy of this State is indicated in the recent statute enacted by our Legislature (L. 1943, ch. 632). It is new section 24 of the Personal Property Law. It provides that where " any United States savings bond is payable to a designated person, whether as owner, co-owner or beneficiary, and such bond is not transferable, the right of such person to receive payment of such bond according to its terms, and the ownership of the money so received, shall not be defeated or impaired by any statute or rule of law governing transfer of property by will or gift or an intestacy  *  *  *." This Act is applicable to bonds issued

either before or after its effective date. The measure was drafted and recommended by the Law Revision Commission. A legislative note annexed to the bill states that its " purpose is to remove doubt, resulting from the decision in *Deyo* v. *Adams* (178 Misc. 859 [1942]) as to the rights of owners, co-owners and beneficiaries designated in non-transferable United States savings bonds. The removal of these doubts will assure purchasers of such bonds that the persons designated by them as payees will receive the money." [Leg. Doc. (1943) No. 65 (M), p. 3.]

It will be observed that the Legislature had no intent or purpose to effect a change in the existing law. There is implicit recognition that under the law theretofore existing the designees of the purchaser would have the right to receive the proceeds. It was only to eliminate any doubt and to remove any impediment to the form of the registered title of the bonds that the statute was enacted.

The Surrogate is of the opinion, therefore, that under the law of this State the beneficiary named in the bonds acquired a present interest at the time of the issuance of the bonds and that the agreement to pay her in the contingency which has eventuated did not result in a testamentary disposition of the property. No consideration of public policy prevents recognition of her rights in this State. On the contrary, our public policy should encourage such recognition.

For all of the foregoing reasons that part of the application which seeks to restrain the executor is denied.

(Other directions included in the original decision of the Surrogate are omitted because of their subordinate importance.)