In the Matter of the Estate of JACOB P. GALEWITZ, Deceased.

Surrogate's Court, New York County, May 3, 1954.

*James N. Vaughan* for Samuel Galewitz, petitioner.

*George Green,* in person, and for President and Directors of Manhattan Company, as executors of Jacob P. Galewitz, deceased, respondents.

*Samuel Robert Weltz* and *Milton B. Frankel* for Hannah Galewitz, respondent.

*Edward R. Finch,* special guardian for Edward Galewitz and others, infants, respondents.

COLLINS, S. The sole issue in this estate now before the court for determination is the validity of a contract between the testator and his son Samuel, whereby each covenanted with the other that the survivor should have the option to purchase on certain terms, price and conditions all of the shares of stock of a corporation known as the Clinton Paper Corporation, owned by the party first dying at the date of his death. The contract is attacked by the widow of the testator and by the special guardian herein as testamentary in character and unenforcible because not executed in accordance with the requirements of the statute relating to wills. It is further attacked by the widow as invalid and unenforcible as an attempted fraud on her rights under section 18 of the Decedent Estate Law.

The will of the testator bequeathed $2,500 to his widow outright and directed the setting up of a trust of one third of his residuary estate with income payable to her for life and with remainder to his six children, two of whom are the infants represented by the special guardian. He bequeathed the balance of his residuary estate outright to the same six children.

The testator died October 10, 1950. He appointed as his executors his son Samuel Galewitz, George Green and the Bank of the Manhattan Company. Letters testamentary were issued to them on June 13, 1951.

For many years prior to the contract and up to the time of his death the testator and his son Samuel, together conducted the business of the Clinton Paper Corporation. In 1933, the testator, in order to maintain and continue his son's interest in the company transferred to him 250 shares out of 750 shares which he then owned and which represented all of the issued common shares of stock of the corporation, retaining for himself 500 shares. On the date of the contract, May 14, 1947, as well as on the date of his death the testator still owned the 500 shares of stock and his son owned 250 shares. After his death his son notified the representatives of the estate of his intention to exercise the option to purchase the testator's shares in the corporation.

The main contention of those who claim the invalidity of the contract, as such, is based on the fact that since the option was intended to apply only to the stock " either party may own at

the time of his death," there was no restriction in it on the right of either party to sell, give away or otherwise dispose of his respective shares at any time in his lifetime. They argue that this alleged infirmity in effect vitiates the contract as a binding obligation and that it constituted a testamentary disposition which had to comply with the Statute of Wills in order to be valid.

Whether an instrument is a valid contract or is an attempted testamentary instrument depends upon the intention of the parties. The test in such case is whether the contract confers a fixed right in the parties to it at the time it is made or whether it is to have no effect at all until the death of either. It does not appear to be seriously questioned that had the contract contained restrictions against the disposition of his stock by either party in his lifetime, it would be enforcible. Similar agreements between stockholders for the purchase and sale of stock by the one first to die have been time and again the subject of judicial determinations and have been held to be valid. (*Chase Nat. Bank* v. *Manufacturers Trust Co.,* 265 App. Div. 406; *Matter of Fairbairn,* 265 App. Div. 431; *Scruggs* v. *Cotterill,* 67 App. Div. 583; *Matter of Ruszkiewicz,* 41 N. Y. S. 2d 437, affd. 266 App. Div. 709; *Matter of Cory,* 177 App. Div. 871, affd. 221 N. Y. 612; *Matter of Sherman,* 104 N. Y. S. 2d 988, affd. 279 App. Div. 981, motion for leave to appeal to Court of Appeals denied, 279 App. Div. 1065, motion for leave to appeal denied, 304 N. Y. 990; *Matter of Becher,* 204 Misc. 523; *Matter of Miller,* 191 Misc. 784; *Matter of Deyo,* 180 Misc. 32.) Where the court has found that what appears to be a contract is in substance a testamentary disposition, it has so construed it (*McCarthy* v. *Pieret,* 281 N. Y. 407).

The argument that there must be an obligation on the optioner at the time he granted the option to refrain from alienating during his lifetime the shares of stock which the optionee has been granted the right to purchase after the death of the optioner is not sustained by the authorities. (*Matter of Ruszkiewicz, supra; Matter of Cory, supra; Matter of Becher, supra; Matter of Deyo, supra.*) The contract here provides that there should be no restriction against alienability during each other's lifetime. Each gave the other the right to purchase whatever stock he held at his death. That arrangement was believed to be for the benefit of each of the parties and the corporation and was so stated in the contract.

At his death the testator possessed the same shares he owned at the date of the execution of the contract. Even had testator

died leaving but a very few shares of the stock he owned at the date of the contract, the option to purchase such remaining shares would still have existed in the survivor under the mutual promises and consideration contained in the contract. As the court said in *Matter of Ruszkiewicz* (41 N. Y. S. 2d 437, 440–441, affd. 266 App. Div. 709, *supra*), where the decedent entered into a contract for the sale of all of the common stock of a corporation standing in his name at the time of his death, regardless of the number of shares, at a certain price per share: '' Nor is there a failure of consideration and mutuality in this contract. The petitioner agreed to buy whatever shares of stock belonged to the decedent at the time of his death. It was a contract of sale. The price was definite, the date of delivery fixed, the terms of payment specific. The petitioner was and is bound to purchase and could be sued if he refused to do so * * * As to the uncertainty of the amount of these stocks to be purchased, there is none. Whatever Mr. Joseph Ruszkiewicz had at the time of his death, Mr. Rogger is bound to purchase. Whatever that amount might be, the respondent took his chances on.''

The court holds that the contract is valid, binding and enforcible. The mutual promises of each to sell and purchase the shares of stock of the one who died first was a valuable consideration for the contract. In it each relinquished his right to bequeath the stock and each secured for himself the benefit of acquiring the other's shares in the business at the price and upon the terms and conditions fixed in the contract. It had all the essence of a contract. It was an agreement for the sale of '' goods '' under section 82 of the Personal Property Law. Shares of stock are '' goods '' within the Personal Property Law (*Coyne* v. *Chatham & Phenix Nat. Bank & Trust Co.*, 155 Misc. 656; *Bishop* v. *Tracy & Co.*, 237 App. Div. 496; *Agar* v. *Orda*, 144 Misc. 149, affd. 239 App. Div. 827, affd. 264 N. Y. 248). The agreement '' may be absolute or conditional '' (Personal Property Law, § 82). The property in such case '' is transferred to the buyer at such time as the parties to the contract intend it to be transferred '' (Personal Property Law, § 99). The agreement here was an arrangement *in præsenti* binding upon each of the parties which came into existence immediately upon its execution, although it was not to take effect and the transfer was not to be made until after the death of one or the other of the parties. It did not become testamentary in character because by its terms it was to be carried out after death. '' It makes no difference under such circum-

stances that part of the reward is payable after death. The character of the promise is not changed by the time fixed for its " enforcement (citing *Ga Nun* v. *Palmer,* 216 N. Y. 603, 609; *Hegeman* v. *Moon,* 131 N. Y. 462; *Carnwright* v. *Gray,* 127 N. Y. 92; *Robb* v. *Washington & Jefferson College,* 185 N. Y. 485). The fact that the son's right to purchase the stock might be destroyed by the testator's alienation of the stock before his death did not affect the existence of the right; it merely made it conditional. Such a conditional right is enforcible when the contingency has taken place. (*Matter of Deyo, supra*; Personal Property Law, §§ 82, 99.)

It is further claimed as a ground of invalidity that the option price, under the formula contained in the contract, is considerably less than the actual value of the shares owned by the testator. That fact, even if true, is immaterial. The " inadequacy of the consideration does not destroy the obligation of the contract " (*Ga Nun* v. *Palmer, supra,* citing *Earl* v. *Peck,* 64 N. Y. 596; *Matter of Bradbury,* 105 App. Div. 250, 255), unless there is fraud or undue influence shown in connection with its execution. The testimony does not disclose any facts or circumstances which would justify a finding of fraud or undue influence in the drawing or signing of the contract.

The court further overrules the contention that the contract is invalid as an attempted fraud on the rights of the widow under section 18 of the Decedent Estate Law. It is well established that a wife has no immediate interest in her husband's property. He may transfer it by deed, contract, gift or otherwise during his lifetime without her consent or approval, provided such transfer is not illusory and not intended to deprive her of statutory rights (*Herrmann* v. *Jorgenson,* 263 N. Y. 348; *Newman* v. *Dore,* 275 N. Y. 371; *Inda* v. *Inda,* 288 N. Y. 315; *Matter of Halpern,* 303 N. Y. 33; *Matter of Ford,* 279 App. Div. 152, affd. 304 N. Y. 598). She has merely an expectant estate and the only interest given her by the change of section 18 and section 83 of the Decedent Estate Law is that if he makes a will she may take what she would be entitled to in intestacy. No facts have been proven to establish a fraud by the testator upon the widow's marital rights. The contract was real and not illusory. It is valid and enforcible.

Submit decree on notice accordingly.