MYNA MOFSKY, Respondent, v. GERTRUDE C. GOLDMAN, as Executrix of HARRY GOLDMAN, Deceased, Appellant.

Fourth Department, March 20, 1957.

*Nicholas E. Brown* and *William B. Gelb* for appellant.

*Ruben A. Dankoff* and *Justen L. Vigdar* for respondent.

VAUGHAN, J. P. Defendant, sued as executrix of the estate of Harry Goldman, appeals from an order granting plaintiff's motion to strike from the answer four defenses for insufficiency in law.

The complaint alleges that plaintiff and Harry Goldman were respectively the daughter and son of Rose Goldman, and that in 1944 the three of them executed the contract annexed to the complaint as exhibit A. That agreement recites that Rose Goldman was the owner of 180 preferred and 40 common shares of Lilac Laundry, Inc., that she had executed her will providing for the distribution of that stock upon the understanding that the agreement would be made, and that "certain transfers of stock of Lilac Laundry, Inc., have been made by the parties hereto upon the [same] understanding". By the contract Rose Goldman agreed not to alter her will or to dispose of any of the shares without the consent of her children. Harry Goldman agreed that he would make a will bequeathing to his sister, this plaintiff, 24 shares of preferred and 26 shares of common, and that if he should fail to do so she should have a valid claim against his estate for the said shares. By her will

Rose Goldman bequeathed 90 preferred and 40 common shares to plaintiff and 90 shares of preferred to Harry Goldman. The latter's will, however, made no provision for plaintiff. The above facts are undisputed. Alleging that she had no adequate remedy at law, plaintiff commenced this action in equity and seeks a decree adjudging that defendant holds the said 24 and 26 shares in trust for plaintiff and that defendant be ordered to transfer them to her. In effect, if not in precise legal theory, the action is for specific performance of the contract.

The answer, after admitting numerous allegations of the complaint, alleges as a "first affirmative defense" that the estate of Harry Goldman now holds a controlling interest in the preferred and common stock of Lilac Laundry, Inc.; that if the performance of exhibit A is specifically enforced, the estate's holdings will be reduced to 50%; that exhibit A was executed without the knowledge or consent of defendant, who at all times mentioned in the complaint was the wife or widow of Harry Goldman; that the said agreement "was designed to and if performed would deprive defendant, Gertrude Goldman, of her rights as the surviving spouse of said decedent to her intestate share in the estate"; and that "the purpose of said agreement and the intent of the parties thereto * * * was to deprive Gertrude Goldman of her full rights and interest in the estate of Harry Goldman".

The second defense is that exhibit A is "an attempted testamentary disposition", invalid because not executed with the formality required of a will. That could not be a defense. "An agreement or promise to make a will is not testamentary simply because the party executing or making it undertakes at some time in the future to make a specified devise or bequest, and it is not, therefore, essential to its validity that it be executed with the formalities of a will." (57 Am. Jur., Wills, § 167.)

The third defense is that plaintiff has an adequate remedy at law to recover any damages sustained by reason of the alleged breach of contract.

The fourth defense, which may be considered with the first, alleges that specific performance of the contract would result in the invasion and impairment of the widow's distributive share.

There is no question that a court of equity may enforce specific performance of a contract to leave property by will, treating the heirs as trustees (*Parsell* v. *Stryker,* 41 N. Y. 480). It is equally true that the "provisions in the Decedent Estate

Law for the benefit of a surviving spouse attach only to such property of a decedent as remains after performance of his obligations and payment of his debts, assuming, of course, that good faith is present throughout." (*Brindisi* v. *Stallone,* 259 App. Div. 1080.) In that case, before the widow married the decedent, the latter had contracted for a valuable consideration to leave his entire estate to plaintiff and the court stated: " The present widow, therefore, married the decedent under circumstances that were equivalent to marrying a man who possessed no property that was subject to devolution at his death. The widow, under the statute, had only an expectant interest which was subject to the contingency that the decedent had not in good faith sold or given away or completely encumbered his property in his lifetime." (See, also, *Matter of Galewitz,* 206 Misc. 218, affd. 285 App. Div. 947; 3 Misc 2d 197, mod. 3 A D 2d 280.) There are, however, other cases which take a stricter view of such contracts where the widow's rights under section 18 of the Decedent Estate Law are affected. These cases recognize that, in the absence of some judicial control of contracts to make wills, section 18 and the public policy represented thereby could be very easily thwarted, and the care with which the courts examine *inter vivos* transfers to determine whether they are real or illusory (e. g., *Newman* v. *Dore,* 275 N. Y. 371) would be quite meaningless. In three cases (*Matter of Lewis,* 4 Misc 2d 937; *Matter of Hoyt,* 174 Misc. 512; *Matter of Erstein,* 205 Misc. 924) a husband undertook by a separation agreement to make a will in favor of his wife, they were then divorced, and he subsequently remarried. It was held in each case that the widow's distributive share should be satisfied before devoting any assets to the performance of the contract. In the last-cited case Surrogate COLLINS stated (p. 929): " It would be anomalous if the rights of the promisees [the first wife and her children] would be substantially greater in the case of intestacy than they would be had the testator left a will which carried out his promise." Appellant invokes that reasoning here and argues that if the agreement had been performed by Harry Goldman (and so discharged), plaintiff could take only as a legatee under the will, in which case her claim would be subordinate to the widow's right of election. Continuing in the cited case, the Surrogate stated that (p. 931) " the difference between a covenant to bequeath and an actual conveyance or perfected lien is too clear to be misunderstood. A creditor may make such agreement with his debtor as he chooses but whenever the settlement agreement touches upon a bequest or devise by either of them, both parties must recognize that,

just as the power to make a will is subject to conditions and restrictions, so, too, is a contract to make a will.''

In considering the effect which is to be given to exhibit A and whether its performance may be specifically enforced, we must remember that the action is in equity and that the granting of the remedy is discretionary. '' This case rests entirely upon equitable principles. The court is free to do that which its conscience dictates. Contracts of the character of the one involved here will be enforced if equity so demands, but although there may be equities supporting it, it will not be enforced if by so doing the rights of others will be invaded. The court may not, in its anxiety to relieve one party, inflict a wrong upon another who is entirely innocent. In other words, a contract to devise property is valid and enforcible unless superior equities have intervened. Equity will not enforce a contract where the result will be harsh and oppressive.'' (*Matter of Arland*, 131 Wash. 297, 298–299.) Thus, '' Specific performance of a contract to leave the entire estate to the plaintiff by will may be refused because it operates inequitably against the promisor's wife and children under a second marriage.'' (5 Corbin on Contracts, § 1169.)

In *Gall* v. *Gall* (64 Hun 600, affd. 138 N. Y. 675) plaintiff sought specific performance of an alleged oral contract whereby his uncle, then deceased, promised to adopt him and make him his heir. Decedent thereafter married and had issue. In dismissing the complaint, partly on the ground that the contract was not established with the required certainty, the General Term further stated (p. 603): '' There is another rule which should be strictly adhered to in this class of cases, and that is, that the remedy is a matter of judicial discretion, and that relief should be withheld where a decree for specific performance would work injustice to innocent third persons, or where it would be contrary to public policy.''

In *Owens* v. *McNally* (113 Cal. 444) the plaintiff sought specific performance of an alleged oral contract whereby, in consideration of her caring for decedent, he promised to bequeath to her all property which he might own at the time of his death. After the making of the contract, he married and died intestate. In denying specific performance and leaving plaintiff to an action of *quantum meruit,* the court noted that (pp. 450–451): '' the question whether relief should be granted or denied in a particular case addresses itself peculiarly to the conscience of the chancellor, and, before a plaintiff entitles himself to it, many considerations enter and are to be weighed. The specific performance must not be objectionable upon other

grounds. The contract, therefore, must be definite and certain, and the remedy asked for must not be harsh or oppressive, or unjust to innocent third parties, or against public policy, or equity will with propriety withhold its assistance." The court further noted that (p. 453) "anything which tends to prevent marriage, or to disturb the marriage state, is viewed by the law with suspicion and disfavor. The defendant widow married McNally in ignorance of the contract, and, it appears, continued in ignorance of the contract until after his death. She acquired distinct rights of heirship and succession. There might have been children born of the marriage with similar rights. It is true that these rights vested after the contract was made, but where a bill is brought for the specific performance of a contract, the after-acquired rights of third parties are equitable considerations to be regarded in adjudicating the questions."

It seems to us that the first and fourth defenses allege matters which, if true, would properly influence a court of equity in determining whether to grant the relief requested. Before a full exploration of the facts is had, it is impossible to know where the preponderance of equity lies and whether the agreement could be enforced without doing an injustice to an innocent third party. In the light of the following circumstances a trial should be had to determine whether equitable relief is available to the plaintiff:

(1) Defendant is, so far as the pleadings reveal, completely innocent, having neither known of nor consented to the contract. That "is a material consideration in weighing the equities of the case." (*Wides* v. *Wides*, 299 Ky. 103, 114.)

(2) At all times mentioned in the complaint, defendant was the wife or widow of Harry Goldman. If, as we have seen, a subsequent spouse may be protected, certainly one who was married to the promisor at the time of the execution of the contract should stand in no less favored a position.

(3) If the contract is specifically enforced, the estate will be deprived of its controlling interest in the corporation, and it is impossible to determine on the pleadings alone whether the provision remaining for the widow would be adequate. Equity would be reluctant to grant a decree which would leave her in a state of poverty.

(4) So far as the record discloses, plaintiff did not part with anything of value or change her position. She was the beneficiary of the contract and of her mother's will, and she now seeks a further benefit from the estate of her deceased brother.

If, as the cases indicate, equitable relief may be withheld from one who has furnished valuable services or otherwise stands in the position of a creditor, it should be extended no more readily to a mere donee.

(5) It is alleged in the first (and by reference in the fourth) defense that the agreement, exhibit A, was designed to deprive the widow of her full rights in the estate of Harry Goldman and was entered into by the parties for that purpose. While an intent to accomplish such a result would not invalidate a genuine *inter vivos* transfer (*Newman* v. *Dore,* 275 N. Y. 371, *supra*) it is a proper circumstance to consider in determining whether specific performance would be equitable. Even the court in *Brindisi* v. *Stallone* (259 App. Div. 1080, *supra*) was "assuming, of course, that good faith is present throughout."

We believe that the above matters raise questions, which can only be resolved upon a trial, as to the proper attitude of a court of equity regarding the relief requested. The plaintiff will contend that it would be inequitable to subordinate her contract to protection of the widow as to stock which came into the estate in the first place only because of the making of the contract. But the origin of the stock in issue does not clearly appear upon this record. The contract recites that, in anticipation of its execution, the parties had made "certain transfers" of stock, from and to whom does not appear. It would be a simple matter for the son to transfer part of his stock to his mother, taking it back pursuant to the contract, burdened with a "duty" of bequeathing it to his sister. The answer does not allege that that was what happened, but it does allege that the agreement was the product of a conspiracy to strip the estate and impair the protection afforded to the surviving spouse by section 18 of the Decedent Estate Law. There should be a full exploration of that before any equitable relief is granted. Of course, we express no present opinion as to the merits of the case or as to the ultimate rights of the parties.

The third defense, that plaintiff has an adequate remedy at law to recover any damages sustained, is in effect an allegation that the case is inappropriate for equitable relief, and should stand for that reason.

The second defense, that exhibit A was not executed with the formality required of a will, should be dismissed. The making of the contract is admitted, and if its specific performance is otherwise permissible, the lack of testamentary formality should make no difference.

The order should be modified in accordance with this opinion and, as modified, affirmed.

All concur. Present — VAUGHAN, J. P., KIMBALL, WILLIAMS and BASTOW, JJ.

Order modified in accordance with the opinion and as modified affirmed, without costs of this appeal to either party.