John J. Dillon, S.
A construction is requested of article “ third ” of testator’s will hereinafter quoted: “ third: In the event that at the time of my death I shall own any stock in Frank Bracalello, Inc., Bracalello Construction Corp. and/or Bracalello Equipment Corp. which I have a right to convey, I give and bequeath the same unto my sisters, Anna Briante, Angela Terwilligar, Mary Bracalello, Julia Fee, Lorraine Taylor, and my brother, Frank Bracalello, Jr., share and share alike, to be theirs absolutely and forever.” (Emphasis added.)
Decedent died on August 28,1957, leaving a will dated August 4,1956 which was admitted to probate and letters testamentary issued thereon on October 15, 1957. On August 10, 1956, six days after the execution of his will, decedent entered into a stock purchase agreement whereby the three family-owned corporations named in the will agreed to purchase all of decedent’s interest in such corporations upon his death for an aggregate price of $100,000. The decedent agreed to remain in the employ of the corporations and to devote his time and best efforts to advance the success of their affairs. Payment for the stock was to be made over a period of five years from the date of decedent’s death.
At the time of the execution of the will and of the stock purchase agreement, decedent owned 234 shares of Frank Bracalello, Inc., which represented 43-33/100% of the outstanding stock, one share of Bracalello Construction Corp., which represented 20% of the outstanding stock, and one share of Bracalello Equipment Corp., which represented 33%% of the outstanding stock. Subsequent to August 10,1956, the father of decedent died leaving decedent with a %th interest in one share of stock of Frank Bracalello, Inc. The brother and sisters named in article ‘ third ’ ’ of the will were at the time of its execution stockholders in one or more of the corporations which later executed the stock purchase agreement. The court is asked to determine what stock decedent intended to convey -by the language of article ‘ ‘ third ’ ’ of his will.
To ascertain the intention of the testator requires an examination of both the will and the stock purchase agreement. From the language used throughout both instruments it would appear that they were drawn by an attorney. Consequently, each word *73 should be examined closely for its precise meaning. The brother and sisters of decedent, as specific legatees, contend that the testator intended to convey all his stock in the three corporations which he owned at his death, despite the existence of the stock purchase agreement; and that since the agreement was executory in nature, sections 37 and 38 of the Decedent Estate Law are controlling and the stock could be transferred under the will, subject to whatever rights were created under the agreement. This construction, the court believes, is not consistent with the intention of testator.
Two conditions were attached to the bequest of stock which testator intended to distribute under article “ third ” of his will. Not only was it to be stock which he owned, but it had to be stock which he had ‘ a right to convey ’ ’. The court has concluded that by adding the last phrase, the decedent disclosed an intention to bequeath only such stock as he owned, and which was legally unfettered, at the time of his death. Although as a matter of record, upon his death, he was the owner of the stock described in the stock purchase agreement, still by reason of the existence of the agreement he did not possess the “ right to convey ” it. It is highly unlikely that the stock purchase agreement was not within the testator’s contemplation at the time of the execution of the will, and yet, was finally executed within a period of six days thereafter. It is much more reasonable to say that the stock purchase agreement had been conceived prior to the execution of the will and that the testator had it clearly in mind when the will was made. This assumption would readily explain the use of the phrase “which I have a right to convey ”.
The corporations with which we are concerned were family corporations, and the possibility existed that the testator might inherit or otherwise acquire additional stock. The court is of the opinion that by the language of article “ third ” he intended to dispose of stock of which he became the owner following August 10, 1956 and which necessarily was not covered by the stock purchase agreement. Actually, such a situation did arise, for upon testator’s death, he was the owner of a %th interest in one share of stock of Frank Bracalello, Inc., which was left him by his father who died subsequent to the execution of both instruments.
Shares of stock are “ goods ” within the Personal Property Law. (Coyne v. Chatham Phoenix Nat. Bank & Trust Co., 155 Misc. 656; Bishop v. Tracy & Co., 237 App. Div. 496; Agar v. Orda, 144 Misc. 149, affd. 239 App. Div. 827, affd. 264 N. Y. 248.) Such property ‘ ‘ is transferred to the buyer at such time as the *74 parties to the contract intend it to be transferred ”. (Personal Property Law, § 99, subd. 1.) The arrangement here was one in frees enti binding upon each of the parties, which came into existence upon its execution, although it was not to take effect and the transfer was not to be made until after the death of testator. (Matter of Galewits, 206 Misc. 218.) The court is therefore of the opinion that sections 37 and 38 of the Decedent Estate Law are not applicable.
Accordingly, the court determines that article ‘ ‘ third ’ ’ of the will only applies to whatever stock testator owned at his death which had not been disposed of by the stock purchase agreement, and that the stock specifically set forth in the stock purchase agreement is to be transferred pursuant to the terms thereof.
Settle order.