[No. 27369. *En Banc.* July 11, 1939.]

MAY DECKER, *Respondent,* v. D. P. FOWLER, *as Administrator, Appellant.*[1]

[1]Reported in 92 P. (2d) 254.

*Reuben Lee Crandell,* for appellant.

*W. C. Hinman,* for respondent.

MAIN, J.—This action was brought to strike certain United States savings bonds from the inventory of the estate of Charles A. Marino, deceased, and to require the delivery of the bonds to the plaintiff. The defendant, as administrator of the estate of Marino, resisted the action in his answer, and, by cross-complaint, sought a judgment requiring the plaintiff to collect the bonds from the Federal government and turn the money over to him as administrator. Both parties moved for judgment on the pleadings, with the result that the judgment entered struck the bonds from the inventory, from which judgment the defendant appealed.

At various times during the years 1935 and 1936, Marino purchased from the treasury department of the United States bonds of the total value of $1,050, and in November of the latter year, he died. The bonds were issued under regulations promulgated by the treasury department, pursuant to an act of Congress approved September 24, 1917, as subsequently amended. Each bond recites:

"THE UNITED STATES OF AMERICA, For Value Received, Promises to Pay to Mr. Charles A. Marino, Payable on Death to Mrs. May Decker."

The bonds, under the regulations of the department, were not transferable, and no substitution could be made for the person named therein as beneficiary. The

regulations further provide that the bonds are payable at the option of the owner prior to maturity, but not within the sixty days after the issue date, at the appropriate redemption value, as is shown on each bond. In this case, the owner of the bonds, Marino, did not call for their payment prior to his death. The regulations provide that, in case of the death of the owner, bonds are payable to the beneficiary named therein; in this case, Mrs. Decker.

The question is whether Marino, during his lifetime, had made a valid gift of the proceeds of the bonds to Mrs. Decker in the event of his death without having called for payment.

 In order to constitute a gift of personal property, one of the things necessary is that there must be a delivery, and that delivery must be such as will divest the donor of the present control and dominion over the property absolutely and irrevocably, and confer upon the donee the dominion and control. *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204; *In re McCoy's Estate,* 189 Wash. 103, 63 P. (2d) 522. As stated, the bonds were not transferable, and there could not be any substitution for the named beneficiary.

 In the case of *Shaw v. Camp,* 160 Ill. 425, 43 N. E. 608, it was held that a promissory note, made payable after the death of the maker and delivered during his lifetime irrevocably to a trustee for the payee and intended as a gift, was "a mere promise to make a gift in the future, which is not enforcible." It may be that the analogy between that case and the one now before us is not complete, but to this extent there is an analogy. In that case, the promise to pay was evidenced by a promissory note. In this case, the promise to pay was evidenced by a bond. Not only this, but the owner of the bond, during his lifetime, had a right to take payment thereof before maturity.

In *Hicks v. Meadows*, 193 Ala. 246, 69 So. 432, a party deposited in a bank six hundred dollars, payable to himself, "or in case of his death, to Joe and Judge Meadows," twelve months after date, with interest to maturity at a certain rate. After the death of the maker, the question arose whether there had been a valid gift, and it was held that there had not, because, in order to perfect such a gift, it was necessary that it be made irrevocable.

In that case, there was a direction to a third party to pay the amount specified in the certificate at the death of the owner. Likewise, here, there is a direction to the Federal government, in the case of the death of Marino, to pay to Mrs. Decker. But this is subject to the contingency that Marino had not elected to take payment of the bonds before his death. The right of Mrs. Decker to remain as beneficiary until the bonds were either paid before or after the death of their owner, is not controlling, inasmuch as Marino had the right, during his lifetime, to call for the payment of the bonds, and, having this right, the proceeds of the bonds had not passed beyond his dominion and control during his lifetime.

It is true that the bonds were not payable after the death of Marino to anyone except Mrs. Decker, so far as the Federal government under its contract is concerned. But the fact that they were made payable only to her as beneficiary after the death of Marino and were non-transferable was in accordance with regulations which, undoubtedly, were intended for the convenience of the Federal government and to avoid numerous transfers. It was no concern of the Federal government to whom the money might belong after it was paid.

In the case of *Warren v. United States*, 68 Court of Claims Reports 634, it was held that war savings cer-

tificates were payable to the beneficiary named therein after the death of the owner. But that case does not hold that the beneficiary was entitled to the money in absolute right.

In the case of *In re Cross' Estate*, 152 Wash. 459, 278 Pac. 414, the question was to whom went war risk insurance after the one taking out the policy had died. That case, however, is not here in point. There, the court was considering an insurance policy and who were the beneficiaries thereof. Here, the court is considering a contract under which money had been loaned to the Federal government.

The appellant was entitled to a judgment in this case, directing the respondent to collect the money on the bonds from the Federal government and turn it over to the appellant, as administrator, as part of the assets of the estate of the deceased.

The judgment appealed from is reversed, and the cause remanded with direction to the superior court to enter a judgment as herein indicated.

Blake, C. J., Jeffers, Millard, Geraghty, and Simpson, JJ., concur.

Beals, J. (concurring)—I concur in the views expressed by the majority, and with the dissenting opinion, in so far as it is stated that Mrs. Decker's interest in the bonds is not that of a donee *inter vivos*, or that of the beneficiary of a gift *causa mortis*. It seems to me clear that neither Federal statutes nor the rules and regulations promulgated by the Federal department can render inoperative state laws governing the administration of the estate of a deceased citizen of that state and the distribution of his property to the persons entitled, under state laws, to receive the same, or the application of state laws providing for the payment of the debts of a decedent out of his property. Surely, a

man cannot invest all of his property in such obligations of the United States as those with which we are here concerned, payable to himself or a named beneficiary, and thereby place his property beyond the reach of his creditors.

While it is not contended here that, if the money due upon the obligations of the United States which Mr. Marino purchased during his lifetime is paid to respondent, the Marino estate will be insolvent, nevertheless if it should be held that respondent's right is indefeasible, and that she is entitled to receive from the United States government payment of the bonds, without accounting to appellant administrator, it would follow that the rights of such a beneficiary as respondent would be superior to those of creditors of the original purchaser of United States savings bonds, issued under the Federal statute controlling the issuance and payment of bonds such as those with which we are here concerned.

The right of the owner of property to give away his property is always subject to the rights of his creditors. The same is true of his right to make contracts with, or for the benefit of, a third party, unless such contracts are made in good faith and for a valuable consideration. It seems to me clear that respondent's rights are subject to administration of the bonds, or their proceeds, as a portion of the corpus of the estate of Charles A. Marino, deceased, and I accordingly concur in the result as stated in the opinion of the majority.

STEINERT, J. (dissenting)—The transactions represented by the purchases of the bonds cannot be held to be gifts *inter vivos*, because Marino did not surrender absolute dominion or control over the bonds or their proceeds; nor can they be sustained as gifts *causa*

*mortis,* because there was neither actual nor constructive delivery of any property by Marino to Mrs. Decker, and certainly there was no delivery by him to her in contemplation of death from an existing illness or impending death. Hence, if this case is to be decided by the application of the law pertaining to gifts, I would have no hesitancy in joining with the majority. But I do not consider these purchases as transactions at all between Marino and Mrs. Decker. They were transactions solely between Marino and the United States government and were contracts pure and simple.

Marino purchased from the government six United States savings bonds which were payable to him on demand at any time after sixty days from date of their issuance or else at maturity, if he were then alive, and upon his death, if the bonds were not already redeemed, to his sister Mrs. Decker, provided she survived him, and on her death if they still were unredeemed, to *her* heirs. In the various transactions involving these purchases, Mrs. Decker was not a party. The record does not disclose that she ever knew anything about them until after her brother's death.

Marino saw fit, as he had the right, to invest his money in bonds which provided that they should be paid to certain persons, at certain times, on certain conditions. One of those conditions was that, if the bonds were not redeemed by him prior to his death, they should be paid to a person designated therein as "beneficiary." Another condition was that he could not substitute a beneficiary for the one designated in the bonds. The beneficiary, Mrs. Decker, therefore had a present vested, though defeasible, interest in the securities.

True it is, as the majority opinion points out, that Marino might have cashed the bonds in his lifetime and thus have cut off any interest that Mrs. Decker

otherwise might have had in them. However, had he done that, it would not have been in repudiation of his contracts with the government, but strictly in performance of them according to their very terms. His death, however, terminated his right and opportunity to demand payment, but the contracts still survived, and the manner of performance on the part of the government was then controlled by other equally binding terms of the bonds. Payment thereafter to Mrs. Decker would be as complete performance, according to the terms of the agreements, as payment to Marino on his demand otherwise would have been.

Marino might have made a present gift of an equivalent amount of money to his sister and no one would have been heard to complain; evidently, he did not wish to do so. He might have made a will in her favor; he did not elect to do that. He deliberately bought bonds prepared in the form prescribed by the government, in which it was provided that, upon certain conditions, they were to be paid to him, and upon certain other conditions they were to be paid to her or to her heirs, and to no one else. Marino certainly intended that, upon the fulfillment of the second set of conditions, Mrs. Decker should receive the money; and the government recognized that intention by agreeing to pay the money to her under those conditions.

It cannot be said properly that Mrs. Decker was to get title to the bonds or their proceeds *at the time of, or after,* Marino's death. She was a registered beneficiary named in the bonds and had a present vested, though defeasible, interest therein contemporaneous with Marino's superior rights. His death simply terminated his rights and thereby left her right or interest indefeasible. Payment to Mrs. Decker will constitute performance of the very contracts by which Marino elected to bind himself.

The case of *Warren v. United States,* 68 Court of Claims Reports 634, which the majority considers inapplicable here, is, in my opinion, very much in point. In that case, it appears that one Wiggins purchased certain Treasury savings certificates payable, in case of his death, to certain named beneficiaries. Wiggins having died, the executrix of his will, who had possession of the certificates, brought an action in the court of claims to compel payment to her, alleging in her petition that the certificates and proceeds thereof belonged to the estate of Wiggins. The court held that the case was simply one of contract, and said:

"The Secretary prescribed the conditions that are to be found in the contract (paragraph 5 of the petition), and without going into details, they provide that the purchaser could have the certificate made payable either to himself or a beneficiary. He was not required or compelled to make it payable to a beneficiary. If he did so, as in this case, it was provided that the name of the beneficiary would be registered in the Treasury, and that the fund represented by the certificate, the certificate being a mere evidence of debt, should be payable to him upon the death of the purchaser leaving the beneficiary surviving, unless the purchaser during his lifetime recalled the designation or collected the fund represented by the certificate. The testator did not cancel the designation of the beneficiaries and did not collect the fund during his lifetime. He died leaving the beneficiaries surviving him. The Secretary of the Treasury in effect said to plaintiff that under the contract 'this money is payable to the beneficiaries and not to you and I refuse to pay it to you.' We are of opinion that in so doing he was acting in conformity to the provisions of the contract.

"In the light of the foregoing conclusions plaintiff's petition should be dismissed and it is so ordered."

So here, the case is simply one of contract between Marino and the government, and the performance of the contracts now entitles Mrs. Decker to the proceeds

of the bonds. This case is even stronger than that case in point of fact, for here the purchaser of the bonds did not have the right to recall the designation of beneficiary, while in the cited case he did.

To say, however, that Mrs. Decker alone is entitled to collect the money, but that she must immediately pay it over to the administrator, is to rob the contracts of their very substance and convert them into something that neither the purchaser nor the government ever intended.

There is no evidence in this case that Marino ever intended that the proceeds of the bonds should belong to anyone other than himself or Mrs. Decker; and, in the absence of any specific direction to the contrary, the only reasonable interpretation to be placed on the language of the instruments is that the proceeds should belong to her in her own right and not as trustee for some one else. The result of the majority opinion will be that what heretofore has been thought to be an attractive form of government security will prove but a snare to those who rely upon it.

I think that the judgment of the trial court should be affirmed.

ROBINSON, J., concurs with STEINERT, J.