[Civ. No. 3353. Fourth Dist. Oct. 6, 1944.]

JOHN A. CONRAD, Respondent, v. JOSEPHINE CONRAD, as Administratrix, etc., Appellant.

Luce, Forward, Lee & Kunzel for Appellant.

John A. Hewicker for Respondent.

MARKS, J.—This is an appeal from a judgment quieting plaintiff's title to and awarding him possession of eight Series D, United States Savings Bonds, having a present value of $3,840, and a maturity value of $4,800. Ownership was claimed by plaintiff and the estate of Mrs. Inman.

The bonds were purchased on March 27, 1940, and provided that "The United States of America, for value received promises to pay to Mrs. Anna M. Inman, 400 W. Joliet St., Crown Point, Indiana, or Mr. John A. Conrad, 2435 33rd Street, San Diego, California, . . . " the amounts due. The bonds were purchased by Mr. Conrad with funds belonging to Mrs. Inman. Mr. Conrad was her agent and had acted for her in various financial transactions.

Mrs. Inman moved from Indiana to California early in 1942, and took up her residence with her daughter, Josephine Conrad, who was the wife of plaintiff, living with them until she died in August, 1942. Mrs. Conrad was appointed administratrix of her mother's estate. The bonds in question here were found in Mrs. Inman's safety deposit box. In this same box were other securities, among which were United States Bonds payable respectively to Mrs. Inman and her son, Harry Fetta, or Mrs. Inman and her daughter, Mrs. Conrad, either as coowners, or to herself with either her son or daughter as beneficiary. All of these securities had been purchased by Mr. Conrad for Mrs. Inman with her funds.

Mr. and Mrs. Conrad were husband and wife from 1915 to 1939 when she obtained a divorce. They were remarried in January, 1942, and were husband and wife at the time of the trial of this action. During all of that time Mr. Conrad had been the trusted agent and attorney in fact of Mrs. Inman. He maintained a bank account in her name in which he deposited her funds and upon which he drew checks. At no time, as far as the record shows, did Mrs. Inman question his integrity or his loyalty to her interests even after the divorce and before the second marriage to her daughter. In a letter to him, dated March 5, 1940, in which she advised the purchase of "baby bonds," she addressed him as "Tony," her nickname for him, and closed the letter "with lots of love, Mother."

When plaintiff purchased the bonds for Mrs. Inman he placed them in his safety deposit box with her other securities where they remained until about April 7, 1942, when she asked him to bring her everything in his possession belonging

to her, which he did. He made a list of the cash in his possession, and of the securities, among which were the "baby bonds" in question here, as well as the other bonds naming her son and her daughter respectively either as coowner or beneficiary. He delivered the securities, cash, and inventory to her. He testified that she checked the cash and securities with the list and then signed the following: "The above statement of my securities and cash on hand is correct in every detail as of this date." The cash and securities were then returned to plaintiff who placed them in his safety deposit box where they remained until about June 24, 1942. She then instructed plaintiff to secure a box for her in which the cash and securities would be placed. Plaintiff rented a box and took the signature card home where plaintiff signed it. He returned the signed card and placed the cash and securities in the box where they remained until the death of Mrs. Inman. Thus she had actual possession of the bonds involved here from about June 24, 1942, until she died. There is no indication that she ever visited the box herself.

The bonds in question were issued under authority of an act of The Congress of September 24, 1917, as variously amended. (Title 31, U.S.C.A., § 752, and annotations.) This section provides that the bonds issued "shall be in such form or forms and denomination or denominations and subject to such terms and conditions of issue, conversion, redemption, maturities, payment, and rate or rates of interest, not exceeding 4¼ per centum per annum, and time or times of payment of interest, as the Secretary of the Treasury from time to time at or before the issue thereof may prescribe." (See, also, Title 5, U.S.C.A., §22.)

It is very generally held in most jurisdictions that regulations promulgated under this and similar authority have the force and effect of law and must be considered as a part of the conditions of the bonds issued. The cases cited under what we will term the "majority rule" fully support this conclusion and will not be repeated here.

Pursuant to the authority given him by the statute the secretary of the treasury promulgated regulations and amended regulations concerning the purchase, issue, reissue, registration and payment of the bonds. Those in effect at the time of the purchase of the bonds in question here contained the following:

"To Owners of United States Savings Bonds, and Others Concerned:

"1. Effective January 23, 1940, Sections I, II and III of Department Circular 530, Second Revision, dated December 15, 1938 (Sections 315.1, 315.2 and 315.3 of sub-title B of Title 31, Code of Federal Regulations, Supp. 1), are hereby amended to read as follows:

## "Registration

"1. *General.* A United States Savings Bond will be issued only in registered form in substantially one of the forms of registration authorized herein. . . . Registration will not be permitted in a form which purports to restrict the right of the owner or other person named in the registration to receive payment of the bond in accordance with these regulations; . . .

"2. *Forms of Registration.* The following forms of registration are authorized: . . .

"(2) In the names of two (but not more than two) persons in the alternative, as, for example, 'John A. Jones OR Mrs. Ella S. Jones.' No other form of registration establishing coownership as between natural persons (individuals) in their own right is authorized. . . .

"(a) *Payment or Reissue.* A savings bond registered in the names of two persons as coowners, for example, 'John A. Jones OR Mrs. Mary C. Jones,' will be paid or reissued as follows: . . .

"(2) *After the Death of One Coowner.* If either coowner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving coowner will be recognized by the Treasury Department as the sole and absolute owner of the bond, and payment will be made only to him; . . .

"(a) *Judicial Proceedings.* The ownership of a savings bond or interest therein may be transferred or established through valid judicial proceedings; *Provided, however,* That no such proceedings will be recognized if they would give effect to an attempted voluntary transfer *inter vivos* of the bond or would defeat or impair the rights of survivorship conferred by these regulations upon coowners and beneficiaries."

▮ In construing the rights of the parties in the bonds issued by the United States we should apply the federal stat-

utes and their interpretation by the federal courts rather than the rules of law of the states and the decisions of the state courts. (*United States* v. *Clearfield Trust Co.*, 130 F.2d 93; *Clearfield Trust Co.* v. *United States*, 318 U.S. 363, 744 [63 S.Ct. 573, 87 L.Ed. 838]; *Garrett* v. *Moore-McCormack Co., Inc.*, 317 U.S. 239 [63 S.Ct. 246, 87 L.Ed. 239].)

There are three cases that support the position of defendant that the bonds belonged to the estate of Mrs. Inman. They each hold that no present vested interest passed to the alternate payee because the attempted gift was never consummated by vesting a present interest in him and by lack of delivery of immediate possession and also by lack of the vesting of any immediate title because the one whose money paid for the bonds (the deceased) at any time before death could have terminated the interest of the coowner by cashing the bonds. (See *Sinift* v. *Sinift*, 229 Iowa 56 [293 N.W. 841]; *Decker* v. *Fowler*, 199 Wash. 549 [92 P.2d 254]; *Deyo* v. *Adams*, 178 Misc. 859 [36 N.Y.S.2d 734].)

*Decker* v. *Fowler, supra,* was decided by a divided court with a strong and what we believe to be a logical dissent. *Deyo* v. *Adams, supra,* was not followed in subsequent New York decisions and cannot now be considered as the law there.

In cases from other jurisdictions which announced what we term the "majority rule" it is held that when the coowner, who furnishes the money with which to pay for the bonds, dies, they belong to the surviving coowner with no interest left in the deceased's estate. They hold that the question is not one of gift but of contract under the federal regulations, those regulations providing for exclusive ownership in the surviving coowner, and that death terminates all interest of the other coowner. Some of the bonds in those cases were issued to two persons as coowners, and others to the purchaser, and upon his death, to a named beneficiary. There seems to be no logical distinction to be made between the rights in the bonds of a surviving coowner or a surviving beneficiary.

The following cases support the foregoing rule: *Warren* v. *United States*, 68 Ct.Cl. 634, certiorari denied, 281 U.S. 739 [50 S.Ct. 346, 74 L.Ed. 1154]; *United States* v. *Dauphin Deposit Trust Co.*, 50 F.Supp. 73; *In re Deyo's Estate*, 180 Misc. 32 [42 N.Y.S.2d 379]; *In re Karlinski's Estate*, 180 Misc. 44 [43 N.Y.S.2d 40]; *In re Di Santo's Estate*, 142 Ohio

St. 223 [51 N.E.2d 639]; *In re Stanley's Estate*, 102 Colo. 422 [80 P.2d 332]; *Franklin Washington Trust Co.* v. *Beltram*, 133 N.J.Eq. 11 [29 A.2d 854].

In the last cited case the court said:

"The statute authorizing the Secretary of the Treasury to issue Savings Bonds subject to such terms and conditions, as he may prescribe, is a valid exercise of the constitutional power 'To borrow Money on the credit of the United States.' Art. I, Sec. 8, Cl. 2. The borrowing power necessarily includes the power to fix the terms of the Government's obligation. *Perry* v. *United States*, 294 U.S. 330, 351, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335; *Legal Tender Cases*, 110 U.S. 421, 444, 4 S.Ct. 122, 28 L.Ed. 204. The treasury regulations under which the bonds were issued and reissued are within the authority given the Secretary by the Congress and have the force of Federal law. *United States* v. *Birdsall*, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930; *United States* v. *Janowitz*, 257 U.S. 42, 42 S.Ct. 40, 66 L.Ed. 120. No state law can vary the terms of the Federal obligations or derogate from their full enforceability. Constitution, Art. VI, Cl. 2; *Irvine* v. *Marshall*, 20 How. 558, 15 L.Ed. 994; *Ruddy* v. *Rossi*, 248 U.S. 104, 39 S.Ct. 46, 63 L.Ed. 148, 8 A.L.R. 843.

"The Treasury regulations above quoted were not devised solely for the protection of the Treasury, to simplify its task of determining whom to pay in case of the death of the registered owner. The regulations have the further effect of defining the rights of the registered owner and the beneficiary as between themselves, for these rights inter sese are the reflection of the contract obligation of the United States to the owner and to the beneficiary severally. The title of the registered owner, his cause of action against the United States, is cut off by his death; the beneficiary thereupon becomes sole and absolute owner.''

We conclude that the rule announced in the foregoing cases is controlling here. A contract made for the benefit of a third person is valid in California and may be enforced by him. (Civ. Code, § 1559.) In the absence of breach of trust on the part of plaintiff, who was the trusted agent of Mrs. Inman, we conclude that the bonds belonged to him after her death.

The trial court found that the bonds were purchased "at her direction, in March, 1940, and were issued in the names of: 'ANNA M. INMAN or JOHN A. CONRAD as co-owners' . . .

at the special direction of said ANNA M. INMAN, . . .'' It was also found. ''that plaintiff in purchasing said bonds as above described, followed the wishes and dictates and desires of said ANNA M. INMAN, and did not take unfair or any advantage of said ANNA M. INMAN, nor did he exercise undue influence over said ANNA M. INMAN in the purchase of said bonds.''

It is argued by defendant that as plaintiff was the confidential agent of Mrs. Inman and benefited from the transaction the evidence of fair dealing is not sufficiently strong and satisfactory to overcome the presumption of fraud on the part of an agent acting under such circumstances so that the quoted findings are not supported by the evidence.

It is true that the findings are chiefly supported by the testimony of plaintiff. He testified that written instructions to purchase the bonds and have them registered in the names of Mrs. Inman or John A. Conrad were contained in a letter from her written about March 20, 1940. He further testified he had searched for this letter and that it could not be found. He also testified that Mrs. Inman had the securities and considerable cash (over $2,900) in her physicial possession and checked them over with the inventory to which we have already referred; that she then signed the receipt we have quoted, returned the money and securities to him with instructions to return them to his safety deposit box where they remained for about two months. He explained the renting of the safety deposit box for Mrs. Inman and placing the cash and securities in that box by saying that she feared that Mrs. Conrad was going to institute an action for divorce and that she did not want her property in his possession to be involved in such a proceeding. The record clearly indicates that the relations between Mr. and Mrs. Conrad were considerably strained at the time of the trial and before.

Plaintiff's testimony finds some corroboration in the cordial relationship which evidently existed between him and Mrs. Inman both before and after the purchase of the bonds. This is evidenced by the letter of March 5, 1940, and the further fact that after she had the bonds, securities and cash in her physical possession and checked them with the inventory, she signed the receipt and returned all of the securities and the considerable sum of cash to the possession of plaintiff and made no objection to the obvious fact that the baby bonds

were registered in her name and his as coowners. This seems to be an instance where "silence gives consent," if nothing more.

This evidence supports the challenged finding. Its weight and sufficiency and the credibility of Conrad as a witness were questions addressed to the trial judge. He concluded that the evidence was sufficiently strong and convincing to overcome the presumption of fraud arising from the relations of the parties. Under the circumstances appearing here we cannot hold this evidence insufficient to support the challenged findings.

■ Defendant argues that the findings are fatally defective because there is no finding that Mrs. Inman intended that Conrad have a present interest in the bonds. This argument is made under the theory that the transfer of an interest to Conrad amounted to an attempted gift to him. As we have already seen this case does not turn on the law of gifts but on the law of contracts. Further, it sufficiently appears from the facts found that Mrs. Inman intended to make Conrad a coowner of the bonds with her with the rights given him as such coowner under the federal regulations.

■ This action was originally brought against Josephine Conrad individually, and Josephine Conrad as Administratrix. Plaintiff was permitted to testify to the following statement he claimed was made by Mrs. Conrad at the time the safety deposit box was opened:

"Q. Did Mrs. Conrad at that time make any statement relative to those particular bonds? A. Yes, sir. Q. What did she say? MR. LUCE: Just a minute—— all right. MR. HEWICKER: Any objection? MR. LUCE: No. THE COURT: Go ahead. Q. There is no objection. Proceed. A. Mr. Kerfoot asked me whether any of my money was in those bonds that were in my name and Mrs. Inman's, and I told him no, and Mrs. Conrad said then those bonds were mine, that they belonged to me, that her mother had wanted me to have them, and that was practically all that was said."

During the progress of the trial the action against Mrs. Conrad individually was dismissed. When she was called as a witness an objection to her testifying was sustained on the ground that she was the wife of plaintiff. While defendant made no offer of what she expected to prove by Mrs. Conrad

we take it from the briefs that she was expected to deny the last quoted testimony of plaintiff.

There were three people present at the opening of the box besides Mr. and Mrs. Conrad,—Mr. Lee, one of the attorneys for defendant, Mr. Kerfoot of the county treasurer's office, and Mr. Harris of the trust department of the bank. Of these three Mr. Lee alone was called as a witness. He testified as to the statement made at the time, as follows:

"A. When Mr. Kerfoot opened the envelope containing the bonds which were registered in the name of Mrs. Inman and Mr. Conrad, he looked over at Mr. Conrad and smiled and said, 'Well, it looks like you get these', or 'these belong to you', or words to that effect, and Mr. Conrad smiled and said, 'Not much chance', or words to that effect. . . . Q. Did Mrs. Josephine Conrad at that time tell Mr. Kerfoot, when he referred to these bonds in which Anna M. Inman and John Conrad were co-owners that 'Those are John's bonds'? A. Well, no, she didn't say that. She did make a remark about them. Q. What did she say? A. She said—— well, she looked at Mr. Conrad and smiled and said, 'Well, you have done a lot for mother, and it is nice that she wants you to have some interest in her estate'—— or words to that effect."

Mr. Lee is a member of the bar of high standing. Mr. Kerfoot and Mr. Harris were not called as witnesses and there is no explanation in the record as to why they were not, nor any suggestion that they were not available as witnesses.

While no member of this court would have objected to Mrs. Conrad testifying under the circumstances appearing here, had he been representing plaintiff, still her evidence seemingly was expected to further impeach plaintiff and corroborate that of Mr. Lee which was already before the court. As evidence of Mr. Lee's recollection of the conversation was placed before the court we cannot conclude that the exclusion of further evidence on the same subject was prejudicial even though we assume without holding that the ruling of the trial judge was erroneous. If defendant had desired further evidence on that subject she might have called Mr. Kerfoot and Mr. Harris if they were available.

If we are wrong in concluding that defendant merely expected Mrs. Conrad to corroborate the testimony of Mr. Lee, still the ruling of the trial court, if erroneous, furnishes

no ground for reversal as no proffer of proof was made. The record must show prejudice which it fails to do. We cannot assume prejudice.

 The trial court found that Mrs. Inman "carefully, fully and punctiliously" examined each of the bonds at the time she checked them over and returned them to plaintiff for safekeeping. Defendant maintains that there is no evidence that she either carefully or fully or punctiliously examined the bonds. The evidence is to the effect that she had them in her physical possession and checked them off against the list furnished by plaintiff. This evidence may not support the finding that she did this "carefully, fully and punctiliously." We regard this as of too little importance to strike the words from the finding. The important fact found is that she had the bonds in her possession and checked them over and returned them to plaintiff for safekeeping. She made no objection to the manner in which the bonds were registered and thus impliedly if not verbally approved the actions of her agent.

We are not called upon to decide what the effect on the interest of plaintiff in the bonds would have been had the trial judge found that he registered the bonds in his name as coowner without express directions to do so from Mrs. Inman. That question is not before us and has not been considered.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.