Ex Parte Luisa de Jesús López, Petitioner and Appellant; Rosario de Jesús et al., etc., Oppositors.

No. 9631. Argued April 2, 1948.—Decided April 29, 1948

*Arturo Ortiz Toro* and *Luis López de Victoria* for appellant. *Francisco R. Flores* for oppositors.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Antonio de Jesús López, a resident of Utuado and a pharmacist by profession, died intestate in a San Juan hospital on or about April 9, 1946. In a proceeding for the corresponding declaration of heirship, his widow Luisa de Jesús López and his grandchildren Rosario, Carmen Gregoria, and Calixto, minors, by representation,[1] were declared his sole and universal heirs. The estate left by the decedent, Antonio de Jesús López, included four United States bonds, purchased in 1944, while he was married with the petitioner–appellant. Two of these bonds are for $1,000 each and two for $500 each, and all of them are payable to "Atty. Antonio de Jesús López *or* Mrs. Luisa de Jesús López, Utuado, P. R." The judicial administration of the estate of the decedent was decreed and on July 15, 1947, an order approving the project

---

[1] Decedent's only son, Porfirio de Jesús de Jesús, had died on September 9, 1944, the minor children mentioned above being his children.

of partition filed was rendered, whereupon it was ordered that the said bonds be deposited in the office of the clerk of the court until it should be decided, by a final judgment, whether the amount of the bonds belonged to the dissolved conjugal partnership or to the separate estate of the petitioner Luisa de Jesús López. Subsequently, on September 10, 1947, the said court rendered a decision to the effect that said bonds were community property and that, consequently, one-half of their value belonged to the widow and that the other one-half should be distributed according to the local law. The widow appealed from the latter decision and in support of her appeal she urges that the District Court of Arecibo erred in not deciding that the above-mentioned bonds belong exclusively to her.

As indicated by the appellant, the question under consideration is a novel one in Puerto Rico. However, similar questions have arisen on numerous occasions in the various States of the Union.

The power of the Government of the United States, under the Federal Constitution, to issue the bonds in question is admitted by the parties. The latter also admit that the purchase and sale of those bonds constitute a contract of loan between said Government and the purchaser of the bonds. Likewise, that pursuant to law, the Secretary of the Treasury of the United States has full power to adopt and promulgate regulations in connection with them, and that such regulations have the force of law and form part of the contract of loan arising between the purchasers of the bonds and the Government.

However, the Civil Code provides that "by virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage." Also, that the legitimate descendants and the widow are forced heirs, and that the relatives of a person have the right to succeed him

by representation in all the rights which he would have if alive. Sections 1295, 736, and 887 of the Civil Code, 1930 ed.

According to § 757c, Title 31 of the United States Code Annotated (31 USCA § 757c 1947 Cumulative Annual Pocket Part, p. 168) "(a) the Secretary of the Treasury, with the approval of the President, is authorized to issue, from time to time, through the Postal Service or otherwise, United States savings bonds and United States Treasury savings certificates, the proceeds of which shall be available to meet any public expenditures authorized by law, . . ." This same Section authorizes the Secretary of the Treasury of the United States to approve regulations to implement its provisions.

Pursuant to the second paragraph of § 8, Art. 1 of the Constitution of the United States, the Congress is empowered "'To borrow money on the credit of the United States." Hence it is indisputable, and the parties so admit, that the Federal Government acted fully within its powers in issuing the bonds in question. Said bonds are, therefore, *prima facie* evidence of the existence of a contract of loan, in which the purchaser of the bonds is the creditor and the Government of the United States is the debtor.

According to § 315.2 of the Regulations promulgated by the Secretary of the Treasury of the United States, relative to the bonds issued by the Government of the United States,[2] the name and complete post office address of the owner, as well as the name of the co-owner or designated beneficiary, if any, and the date as of which the bond is issued will be inscribed thereon at the time of issue by an authorized agent. The form of registration used must express the actual owner- ship of and interest in the bond and, except as otherwise specifically provided in these regulations, will be considered as conclusive of such ownership and interest. Said regula- tions also provide (§ 315.3) that only residents of the United

---

[2] Code of Federal Regulations of the United States, Cumulative Supplement, Titles 28–32, pp. 9017 and following.

States, including its territories and insular possessions, the Canal Zone and the Philippine Islands, and American citizens temporarily residing abroad, may be designated as owners, co-owners or beneficiaries. The regulations further provide (§ 315.4 (b)) that the bonds may be registered in the names of two (but not more than two) persons in the alternative as co-owners, for example: "John A. Jones or Mrs. Ella S. Jones." They also provide, in § 315.32(a) and (b), that during the lifetime of both co-owners the bonds will be paid to either co-owner, and that *"if either co-owner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving coowner will be recognized as the sole and absolute owner of the bond, and payment will be made only to him."* (Italics ours.)

However, the question at issue is not whether the amount of the bonds is conjugal property, but whether the one-half interest, which belonged to the husband—one of the co-owners—during his life, should at his death belong to his legitimate descendants together with his widow, or to the latter exclusively. Regarding the one-half interest owned by the widow there is no dispute whatsoever in this case, since it appears herein that she is both the surviving spouse and a co-owner.

■■ We have only found three cases which hold that the provisions of the Regulations of the Secretary of the Treasury have been devised solely for the protection of the rights of the Government of the United States in relation to the person to whom the proceeds of the bonds should be paid upon their being surrendered for redemption; that the effect of said regulations ceases once payment is made; and that such regulations can not affect in any way the provisions of the laws of the State where the owner, co-owner, or beneficiary of the bonds resides or dies. They are *Deyo* v. *Adams et al.,* (New York 1942) 178 Misc. 859, 36 N. Y. Supp. (2d) 734; *Decker* v. *Fowler,* (Washington 1939) 92 Pac. (2d) 254; and *Sinift* v. *Sinift,* (Iowa 1940) 293 N. W. 841. The effects

·of the opinions rendered in the first two of those cases were, however, abrogated shortly thereafter by the Legislature of the States of New York and Washington. 40 McKinney's Consol. Laws of New York, Ann. (Supp. 1943) § 24.5 and Washington Rev. Stat. (Remington Supp. 1943) § § 11548–60, 11548–61. Moreover, those three cases have been the subject .of widespread criticism and have not been followed by any other state. In New York, of course, they have not been followed either. *In re Staheli's Will*, 57 N. Y. Supp. (2d) 185; *In re Fliegelman's Will*, 55 N. Y. Supp (2d) 139; *In re Kalina's Will*, 53 N. Y. Supp. (2d) 775; *In re Karlinski's Estate*, 43 N. Y. Supp. (2d) 40; *In re Deyo's Estate*, 42 N. Y. Supp. (2d) 379.

According to the overwhelming weight of authority, any regulation issued by the Secretary of the Treasury of the United States in conformity with the Act which empowers him to do so, has the force and effect of law; the Act authorizing the issuance of the bonds as well as the regulations ;adopted pursuant thereto, form part of the contract of loan existing between the purchasers of the bonds and the Government of the United States.[3] Since the latter is one of the ·contracting parties, the contract becomes a federal one, and it is necessarily governed by the federal laws and regulations; and since such contracts of loan are governed by the federal laws and regulations, which, under the clear and ·express provisions of the second paragraph of Article VI of the Constitution of the United States, shall be the supreme law of the land,[4] any state law in conflict therewith is

---

[3] Cf. *Torres v. Fernández*, 65 P.R.R. 584, 592; *People v. Peñagarícano, etc.*, 54 P.R.R. 583; *Bas v. Municipal Court*, 50 P.R.R. 302; *Avilés v. Sons .of Rafael Toro, Ltd.*, 27 P.R.R. 616; *Quiñones v. Castelló*, 16 P.R.R. 467, 477.

[4] "Art. VI.

1.  .    .    .    .    .    .    .    .    .    .

2. This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

superseded by the provisions of the Act and of the regulations of the Treasury. See *Tim* v. *Long Branch et al.*, 171 A.L.R. 320, 53 Atl. (2d) 164; *Morris* v. *Jones*, 329 U.S. 545, 553, 91 L. ed. 488, 168 A.L.R. 656, 664, 67 S. Ct. 451; 56 Am. Jur. § 19, p. 146 and 11 Am. Jur. § 42, p. 649. Inasmuch as in the said regulations it is clearly stated that when either co-owner dies the surviving one shall be recognized as the sole and absolute owner, we must conclude, in harmony with these authorities and the regulations, that the bonds involved herein exclusively belong to the petitioner Luisa de Jesús López. The cases in which a similar conclusion has been reached are indeed so numerous, that it will suffice to cite the following ones; *Harvey* v. *Rackliffe*, (Maine 1945) 161 A.L.R. 296, 41 Atl. (2d) 455; *In re Briley's Estate*, (Florida 1945) 21 So. (2d) 595; *Myers* v. *Hardin*, (Ark. 1945) 186 S.W. (2d) 925; *Davies* v. *Beach*, (California 1946) 168 Pac. (2d) 452; *Conrad* v. *Conrad*, (Cal. 1944) 152 Pac. (2d) 221; *Ervin* v. *Conn.* (North Carolina 1945) 34 S. E. (2d) 402; *In re Fliegelman's Will*, (New York 1945) *supra; In re Kalina's Will*, (New York 1945) *supra; In re Deyo's Estate*, (New York 1943) *supra;* and *United States* v. *Dauphin Deposit Trust Co.*, (Penna. 1943) 50 Fed. Supp. 73; and cases cited therein.

In *Conrad* v. *Conrad, supra*, (Cal. 1944), for example, it is stated: "In cases from other jurisdictions which announced what we term the 'majority rule' it is held that when the co-owner, who furnishes the money with which to pay for the bonds, dies, they belong to the surviving co-owner with no interest left in the deceased's estate. They hold that the question is not one of gift but of contract under the federal regulations, those regulations providing for exclusive ownership in the surviving co-owner, and that death terminates all interest of the other co-owner. Some of the bonds in those cases were issued to two persons as co-owners, and others to the purchaser, and upon his death, to a named beneficiary. There seems to be no logical distinction to be

made between the rights in the bonds of a surviving co-owner or a surviving beneficiary.'' Numerous cases are then cited which uphold the announced views.

Further on, in the case of *Conrad* v. *Conrad,* it is stated:

"The Treasury regulations above quoted were not devised solely for the protection of the Treasury, to simplify its task of determining whom to pay in case of the death of the registered owner. The regulations have the further effect of defining the rights of the registered owner and the beneficiary as between themselves, for these rights inter sese are the reflection of the contract obligation of the United States to the owner and to the beneficiary severally. The title of the registered owner, his cause of action against the United States, is cut off by his death; the beneficiary thereupon becomes sole and absolute owner."

We fully agree with the views set forth in the case above cited and in all the others which are in harmony therewith. Our insular law must give way in the face of the mandate of the federal legislation extended to this island. Cf. *Avila* v. *District Court, ante,* p. 10; *Latoni* v. *Municipal Court,* 67 P.R.R. 130; *People* v. *The Shell Co. (P. R.) Ltd.,* 49 P.R.R. 218; *Dávila* v. *District Court,* 43 P.R.R. 532; and *Ex parte Coll,* 11 P.R.R. 49. Unquestionably this should be so. When the Federal Government issues bonds it does so with the fundamental purpose of carrying out important national projects which ordinarily concern the very existence of the nation. If it were decided that these bonds are affected by state laws, this would result in their being given different status in each State of the Union. Such a construction would raise innumerable questions over the validity of the bonds and would substantially impair the power of borrowing money conferred upon the Congress by the Constitution. As was stated in *United States* v. *Dauphin Deposit Trust Co., supra:* "These savings bonds are issued and sold throughout the United States. Application to the issue and sale of these securities of state law would lead to a great diversity of rules regulating title and redemp-

tion and would subject the entire financing plan of the Federal Government to exceptional uncertainty by making identical transactions subject to the vagaries of the several states."

A question similar to the one under discussion was presented to the Court of Claims of the United States in the case of *Warren* v. *United States*, 68 Ct. Cls. 634. Said court held that the case before it was simply one of contract, of which the Act of Congress and the regulations of the Treasury formed part; that said regulations were consistent with the Act and not in violation of its purposes and, therefore, had the force and effect of law and formed part of the contract between the parties. The court further held that in refusing to pay the certificates to the executrix of the purchaser, the Secretary of the Treasury acted in harmony with the terms of the contract. The petition of the executrix was accordingly denied. Upon the case being taken to the Supreme Court of the United States, the latter court refused to issue a writ of certiorari and review the same. 281 U. S. 739, 50 S. Ct. 346. 74 L. Ed. 1154.

The decision appealed from will be reversed and a judgment rendered declaring that the sole and absolute owner of the four United States bonds involved herein is the petitioner Luisa de Jesús López.