MARÍA RONDA WIDOW OF BLONDET, Plaintiff and Appellee, *v.* MERCEDES TORRES WIDOW OF BLONDET ET AL., Defendants and Appellants; JULIA BLONDET DE PIZÁ and RICARDO H. BLONDET, Defendants.

No. 10117.   Argued May 12, 1950.—Decided July 5, 1950.

*Marcelino Romany* for Mercedes Torres widow of Blondet, Ivelisse, Isabel, and José Joaquín Blondet Torres. *Lionel Fernández Méndez* for Margarita Blondet. *Adolfo García Veve* for Dolores Blondet. *José Ramírez Santibañez* for Julia Blondet. *Ricardo H. Blondet pro se. Córdova & González* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The question to be determined in this case is whether five $1,000 E Bonds issued by the United States belong to María Ronda viuda de Blondet or whether they belong to the *Sucesión* of Carlos H. Blondet. The bonds were purchased by Blondet while he was still alive. They were issued in the name of "Mrs. María R. de Blondet". After Blondet died, a judicial administrator was named and the bonds came into the possession of the administrator. In closing the judicial administration, the latter deposited the bonds with the Secretary of the Tribunal of the District of San Juan, to be delivered to whom they corresponded.

The widow filed a complaint in the lower court praying for a declaratory judgment that the bonds belonged to her. Some of the members of the *sucesión* filed an answer, alleging that half of the proceeds of the bonds belonged to the *sucesión* pursuant to a stipulation signed by the plaintiff and the defendants. The lower court granted the motion of the plaintiff for a summary judgment, and those members of the *sucesión* who had answered the complaint appealed.

The first assignment is that the lower court erred in not giving effect to an alleged contract between the widow and the defendant heirs contained in the stipulation pursuant to which, according to the appellants, the lower court adjudicated the ownership of these bonds in the various heirs in the proportion agreed on by the widow and the other heirs.

██ It is not disputed that, absent any agreement or contract to the contrary by the widow, these bonds belonged exclusively to her at the death of Carlos H. Blondet. *Ex parte de Jesús*, 68 P.R.R. 646; see *Wissner* v. *Wissner*, 338 U. S. 655. The record shows, however, that before *Ex parte de Jesús* was decided, the parties, including the plaintiff, believed the bonds were community property. They were listed by the administrator as part of the estate, and were included therein for purposes of payment of inheritance taxes. But this merely means that everyone concerned, including the widow, had misconceived the law as to the ownership of the bonds. It certainly did not deprive her of her rights therein if she acted diligently to protect them, unless she in some way sold or transferred them.

The appellants assert that she did dispose of her exclusive interest therein by virtue of a stipulation filed in the judicial administration proceeding. The dispositive portion of the stipulation provides: (1) the judicial administration is terminated and "the properties" are delivered to the heirs; (2) the participation of the heirs are changed so that the heirs of José H. Blondet will have the same share in the third of the extra portion of the properties of Carlos H. Blondet as his other four sons; (3) recordation of the properties in favor of the parties concerned was ordered in the portions recited. Pursuant to this stipulation, the lower court entered the corresponding judgment, including a provision that the administrator shall deliver immediately to the heirs of Blondet "the hereditary property" under his administration.

We are unable to read this stipulation as a contract whereby the widow ceded, sold or transferred anything to anybody. It does provide that four of the children cede part of their interest in the third of the extra portion to the *sucesión* of the fifth child, so that all the children would be treated equally. But the community partnership was not liquidated therein. Nor did it recite or determine in any way, as to the property in the hands of the administrator, what was private property, what was community property, or what property formed part of the "hereditary property" which was to be delivered to the heirs.

The purpose of the stipulation obviously was primarily to give the fifth child an equal share and to release the *hereditary property* from judicial administration. But there was nothing in the stipulation which affected the interests of the widow: it neither enhanced nor detracted from her rights. The short of it is that it simply was not an agreement that specific items, such as the bonds, which are not mentioned in the stipulation, are classified as part of the hereditary property. We cannot spell out a contract on the part of the widow to relinquish her legal rights in the exclusive ownership of the bonds. She was therefore free thereafter to assert her legal title thereto, as she has done in this suit for a declaratory judgment. Under the foregoing circumstances, we do not believe *Arandes* v. *Báez*, 20 P.R.R. 364, *Martínez et al.* v. *Registrar of Arecibo*, 27 P.R.R. 768, and *Soriano et al.* v. *Rexach et al.*, 23 P.R.R. 531, cited by the appellants, are applicable to this case.

Under this assignment the appellants also argue that we should recognize a resulting trust in the proceeds of the bonds in favor of the members of the *sucesión*. But, for the reasons already stated, we find nothing in the stipulation which warrants that result. Nor can we say that our community property law compels this conclusion; to so hold would be to render meaningless our decision in *Ex parte de Jesús, supra.*

To the extent that the cases cited by the appellants are to the contrary, we cannot agree with them.[1]

█ The second assignment is that the lower court erred in not holding that by virtue of the stipulation and judgment entered thereon, the widow was estopped from alleging that she was the exclusive owner of the bonds. But here the widow said or did nothing to mislead the heirs or to induce them to change their position. The essential element of a representation by the widow is therefore lacking. The truth is that *all* concerned were acting on an error of law. But that does not entitle the heirs to thwart the widow in the exercise of her rights when she subsequently discovered them and diligently pursued her remedy. See *Hopgood* v. *Porto Rican and American Ins. Co.*, 60 P.R.R. 322, 327.

█ Nor can we say that the payment by the administrator of inheritance taxes on the basis of a valuation which included these bonds in itself works an estoppel against the plaintiff. Assuming that the insular inheritance tax applied to these bonds, at the most the other heirs are entitled to reimbursement by the widow for the small portion of the total amount of the inheritance tax which is attributable to the bonds.

The third and fourth errors are (*a*) that a resulting trust existed in favor of the appellants and (*b*) that the lower court erred in entering a summary judgment for the plaintiff. What we have already said is sufficient to dispose of these errors.

The judgment of the district court will be affirmed.

---

[1] *Cf. Succession of Geagan*, 33 So. 2d 118, 122 (La., 1947); *Union Nat. Bank* v. *Jessell*, 215 S. W. 2d 474 (Mo., 1948). We note that the question of fraud is not involved in this case and we leave it open. *Cf. Katz* v. *Driscoll*, 194 P. 2d 822 (Calif., 1948); *Conrad* v. *Conrad*, 152 P. 2d 221 (Calif., 1944).